222 P.2d 801

ONG et al. v. PACIFIC FINANCE CORP.
OF CALIFORNIA et al.

No. 5154.

Supreme Court of Arizona.

Oct. 9, 1950.

Richard H. Chambers, of Tucson, for appellants.

Darnell, Robertson & Holesapple of Tucson, for appellees.

PHELPS, Justice.

The facts in this case are that the Pacific Finance ¡Corporation of California (hereinafter called the company) is a small loan concern engaged in business at 53 East Broadway, Tucson. Its office is located on the ground floor and occupies a space of approximately 30 x 65 feet. There is a counter in the office 8 to 10 feet south of the front door. This counter is 30 inches wide and extends about 15 feet from the west wall of the office. At the east end of the counter a railing extends south almost to the south wall completing the .office enclosure. Appellee E. H. Taylor is manager of the Loan Department of the company and is lessee of the premises occupied by it.

At the entrance to the office a .cement ramp has been constructed extending one and a half to two feet out on the sidewalk with an incline of about 25 degrees. This ramp is covered with a rubber matting. The ramp was evidently constructed to take care of a slight elevation of the office floor above the sidewalk. The floor of the entire office is covered with rubberized linoleum. This rubberized linoleum is treated with Johnson's paste wax every month or six weeks. It is put on by a rotary machine made for the purpose of waxing floors. At other times only a broom or push broom is used by the janitor in taking care of the floor. He uses no sweeping compound of any kind. Neither does he use any water.

The appellant is a young ·Chinese woman in her late 20's weighing 170 to 180 pounds.

On Saturday March 22, 1947 at the request of the company appellant went to its office just before it closed at noon to take care of a past due installment on a small note she had executed in its favor.

There are two windows on the front counter of the office where these payments are received and it was to one of these windows that appellant was proceeding when she fell and injured her left knee. She testified she opened the front door and stepped inside. She is sure she did not fall when she took her first step, and believes it was the second or third step that she fell or it might have been the fourth step; that she fell on her right side and that her head was near the first customer window; that she felt a slippery substance

either water or wet wax (under her feet); she did not see either water or wet wax at the point on the floor where she fell but did see a substance near the window like water. She then said: "There was little puddles of water there." There is nothing definite in the record indicating how far these puddles of water were on the floor from where appellant slipped and fell. The floor had been waxed approximately a week before the date appellant fell and the manager stated that the wax film would wear off in three days after its application. The traffic on the floor at this particular point where plaintiff fell was heavy and especially on Saturdays when fifty to seventy-five persons were waited on by the different departments during the morning, 65% to 75% of whom were waited on at one of these two windows, thus necessitating the use of the floor space between the front door and one or the other of the two customer windows on the front counter.

At the close of the case on motion of the defendants the trial court instructed a verdict for the defendants. From this order and from the judgment entered thereon and from the order denying a motion for a new trial an appeal is prosecuted to this court.

Appellant assigns as error:

1. The trial court erred in directing a verdict and entering a judgment thereon in favor of the defendants for the reason that there was sufficient evidence in the record from which a jury could reasonably have found defendants guilty of negligence and consequent injury therefrom.

2. That the trial court erred in denying plaintiff's motion for a new trial for the same reasons.

3. The trial court erred in refusing to permit plaintiff to make a demonstration of Johnson's wax in the presence of the jury for the purpose of comparing her sensation of feeling at the time she fell, with the sensation of feeling produced by the test.

We do not think there is any merit to appellant's third assignment of error. In the first place there is no evidence whatever that any servant of the company had placed any of Johnson's wax on its floor for approximately a week immediately prior to appellant's injury. Secondly that an inspection made by the manager immediately after the accident showed no evidence of fresh or wet wax or the presence of water at the point where appellant slipped and fell. Appellant admitted that she saw neither water nor wet wax at that point. The fact that she may have seen water or wet wax near the window is no evidence of there having been any of either at the point where the accident actually occurred. The proposed demonstration of pouring Johnson's wax on the floor and rubbing her foot in it therefore would have borne no resemblance to the condition of the floor at the spot in the office of the company

where appellant slipped and fell. Such a demonstration would in fact have constituted reversible error under the circumstances. In order to admit such evidence the condition produced must be shown to be substantially the same as that existing at the time of the accident which condition it is claimed caused such accident and upon which the negligence of appellee is based. Although the facts are entirely different this principle is enunciated in Choctaw Electric Co. v. Clark, 28 Okl. 399, 114 P. 730. This appears to be the universal rule. See also Montgomery Ward & Co. v. Wright, 70 Ariz. 319, 220 P.2d 225, and cases cited therein.

Assignments of error 1 and 2 are based upon the ground that the evidence relating to the negligence of appellees was sufficient to require that question to be submitted to the jury.

In order to determine this issue it is necessary to refer to the transcript of the evidence.

As above pointed out the evidence of appellee is undisputed that the waxing of appellee's floor was done prior to March 18th and possibly prior to March 11th; that at the point where appellant fell the floor had been walked upon daily by many people; that immediately after the accident an inspection of the floor at that point was made by the manager and that he found no foreign matter on the floor.

Appellant testified with respect to the point where she fell: "Well, all I know it was slippery." Again: "It was slippery." And again: "It was a slippery substance either water or wet wax." When asked by counsel for appellee on voir dire: "Which of the members of your body were you using at the time in order to detect that feeling? In other words, did you feel it with your hand, with your foot or what?" and she replied: "Well, when I walked in, the floor was slippery, that is what it felt like." She further stated that the only reason she had for saying it felt like water or wet wax was the sensation she felt through her shoe.

"Q. You didn't see it with your eyes? A. Well, I saw a substance near the window there, it was something like water. There was little puddles of water around there.

"Q. But that was not where you slipped? A. Well, it was all around there, but I didn't feel any.

"Q. You didn't see anything in the vicinity of the spot where you fell? A. I don't know if it was in that vicinity where I fell down or not. I was in no state of mind to see at that time, I was too much in pain.

"Q. When was it that you saw the puddles around the front of the window? A. There was two gentlemen, I don't know who they were, that picked me up and seated me on a chair there. That is when I noticed it."

\*　　\*　　\*　　\*　　\*　　\*

"Q. But you didn't see any back in the center of the room where you fell? A. No, I didn't notice it there."

Counsel admits that appellant's testimony taken alone is insufficient to take the case to the jury but argues that when supplemented by the testimony of appellee Taylor and the witness Charouleau appellant established probative facts from which negligence and the causal relation may be reasonably inferred and under the rule laid down in Apache Railway Company v. Shumway, 62 Ariz. 359, 158 P.2d 142, 159 A.L.R. 857, the question should have been submitted to the jury.

He argues that because the witness Charouleau testified that in 1948 about a year after appellant's accident she fell somewhere back of the counter while in the office of the company and at that time she "found the floor was waxed and there was a spot where the wax had not been completely smoothed out. It was caked. * * * There was one spot close to where I stood that showed definite evidence of being caked. The wax had not been smoothed out." this established the fact that appellee had negligently applied the wax in 1948 and that when Taylor testified the condition of the floor then was the same as it was when Mrs. Ong fell this established negligence in applying the wax in March 1947. The witness Charouleau was further asked the following questions and made the following answers:

"Q. You found caked wax? A. Yes, sir.

"Q. On the floor where you fell? A. Well, approximately where I was standing after they picked me up."

She said she remembered skidding over the waxed floor and being picked up. She said she told Mr. Taylor: "Your floor is waxed and it seems to cake in spots, doesn't it."

On cross examination she was questioned as follows:

"Q. This spot that you refer to. where the wax was caked— A. Yes, sir.

"Q. You say you saw it? A. Well, it looked like a darker spot and it *impressed* me as being wax that had not been smoothed out properly. (Emphasis supplied)

"Q. That was the next question I was going to ask you. Just what was the appearance? A. Darker.

"Q. It was darker? A. Darker, yes, sir."

The appellee Taylor upon cross examination by counsel testified concerning this matter that he found no slick spot on the floor where the witness Charouleau fell and no foreign substance. He was then asked the following questions:

"Q. The conditions on the day Miss Charouleau came in there were about the same as to the floor, as they were on the day Mrs. Ong was in there weren't they? A. To the best of my knowledge, yes.

"Q. You would say they were? A. Yes."

The following questions were then asked by his own counsel:

"Q. Is there any difference in the condition, the general condition of the floor, or the part of the floor, upon which Miss Charouleau fell and upon which Mrs. Ong fell? A. I misunderstood the question. I thought you were speaking of the general condition of the whole floor. Generally speaking the condition of the entire floor was the same, but there was a difference between the two spots because there is heavier traffic coming in the front door than there is working in back of the counter.

"Q. Then you say it is not the same? A. No, as far as the two spots are concerned I would say that there was a difference.

"Q. Now, you checked them though, you have told me, Mr. Taylor, that you checked both spots and I asked you if they were in about the same condition and you said 'yes' after I had asked you if you checked both spots. A. To the extent that I found nothing foreign on the floor, no slippery spot or anything, they were the same.

"Q. Then the general condition of the surface of of the floor on the spots at the time were, where Miss Charouleau fell, was just about the same as the general condition of the surface of the floor at the time and place where Mrs. Ong fell. Isn't that right? A. Well, to the extent that there were no unusually slippery places.

"Q. No, not unusually slippery. They appeared about the same to you, didn't they? A. To an appearance, yes.

"Q. And you examined both places? A. Yes."

We fail to find anything in the testimony of the witnesses Taylor and Charouleau that tends to add anything at all to the testimony of the appellant. It is true that Miss Charouleau testified she fell in the office of the company about a year after Mrs. Ong fell, that she was back of the counter when she fell and saw caked wax on the floor near where she was standing after being picked up, and that she remembered skidding across the floor; that she was an expert at falling and the floor looked dark where she saw the caked wax. She later said it impressed her as being caked wax. She nowhere says she slipped on the caked wax or that the caked wax she saw near where she was standing was located at the point where she began to skid or upon the area over which she skidded. She intimated that she fell without any apparent reason. The most that can be gathered from Taylor's testimony is that he made an inspection of the floor in each instance immediately after Miss Charouleau and Mrs. Ong fell and that the conditions of the floor where Miss Charouleau fell and where Mrs. Ong fell were the same to the extent that he found nothing foreign on the floor and that neither of the spots were slippery.

432

In determining this question we must, of course, construe the evidence most favorably for appellant and if the evidence is of such character that reasonable minds may differ as to the inferences to be drawn from the facts the case must be submitted to the jury. Gila Water Co. v. Green, 27 Ariz. 318, 232 P. 1016.

It is certainly not negligence per se to apply Johnson's wax to floors. As has been said, the application of floor dressing of some kind to allay dust is considered a sanitary measure. The duty owed appellant by appellee was to exercise ordinary care in the application and selection of the material used in treating its floor and in the maintenance of the floor thereafter. J. C. Penny Co., Inc., v. Robison, 128 Ohio St. 626, 193 N.E. 401, 100 A.L.R. 705; Smith v. Union & New Haven Trust Co., 121 Conn. 369, 185 A. 81.

The testimony taken together, considered in its strongest light in favor of appellant wholly fails to show any negligence by appellee either in the selection or application of the material used or the exercise of ordinary care in the maintenance of its floors. Neither does it establish any probative facts from which the negligence of appellee or any causal relation between any act of appellee or its servants and the injury of appellant may be reasonably inferred.

Counsel both for appellant and appellee devoted considerable space in their respective briefs to the case of Owl Drug Co. v. Crandall, 52 Ariz. 322, 80 P.2d 952, 120 A.L.R. 1521. We are of the opinion from an analysis of the evidence in this case that the rule laid down in the Crandall case has no application here.

Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.