[Civ. No. 19743. Second Dist., Div. Three. Dec. 31, 1953.]

PATRICIA BAKER, Appellant, v. MANNING'S, INC. (a Corporation), Respondent.

Demler & Eckert, Edison J. Demler and Charles E. Samuel for Appellant.

Moss, Lyon & Dunn, Richard B. Coyle and Henry F. Walker for Respondent.

WOOD (Parker), J.—Action for damages for personal injuries sustained as a result of slipping and falling on the floor of defendant's bakery and restaurant in Long Beach. The jury was instructed to return a verdict for defendant. Plaintiff appeals from the judgment.

The bakery department, which is 20 feet wide, is in the front part of the building, and the restaurant is in the rear. The building (lengthwise) extends north and south. The bakery counter also extends north and south, and the front side of the counter is about 8 feet from the east wall. The east wall is paneled with mirrors.

Plaintiff testified that on October 5, 1950 (Thursday), about 6:30 p. m., she went to the bakery counter and purchased bakery goods; then she went to the mirror and adjusted her hat; then she started toward the entrance door; after she had taken two or three steps in a "natural walk," she suddenly slipped, she felt herself skidding; her left foot skidded forward; she made circular motions with her arms to prevent falling; in trying to regain her balance, she went forward 3 or 4 feet from where she started to slip, and then she fell; the next thing she remembered was that she was sitting in a chair in the front part of the bakery, facing the mirror; at that time she felt shaken and shocked; she looked at the area where she was when she fixed her hat— from where she had come—and she saw that the floor had a dark, shiny surface and that it was made of asphalt tile; she saw a mark there which "would be as if you had taken an eraser over a shiny black surface and made a streak"; the mark started 2 or 3 feet from the mirror, was between 3 and 4 feet in length, and extended in the same direction that she had been walking—leading from the mirror to the door; she did not see any other marks or any material or moisture or anything foreign on the floor; she was wearing black suede shoes with leather soles and cuban heels about 2 inches high; she had the shoes about six months and had worn them a great deal; after she had fallen and while she was sitting in the chair or when she was at home, she saw a streak of white-greyish substance on the side of her shoe; the substance was wax and she removed it with a wire brush; the shoes were lost in an automobile accident.

The manager of the store, called as a witness by defendant, testified that he did not see plaintiff fall but that he was informed by an employee of the store that a woman had fallen; he went to the scene of the accident and saw plaintiff lying on her side on the floor and he would say that she was unconscious at that time; they assisted her to a chair; he tried to find out what happened but he did not remember whether she told him anything; she seemed quite upset and she left immediately; he inspected the area of the floor where she had been lying and he did not see any foreign substance on the floor; he walked over the floor several times and it was not slippery; it was not shiny and it was never glossy after being used all day; it had been swept the night before and probably was dusty but not dirty; the floor was damp-mopped nightly; the floor was waxed each Saturday after

the close of business; he did not know whether the floor was waxed the Saturday night before the accident; the purpose in waxing the floor was for the appearance—to clean the floor and give it a gloss; about 1,000 people had passed through the entrance on the day of the accident; the people who come into the store go over the same general path in order to get to the restaurant and that area (path) was less glossy than the area to the side; he had been the manager about 21 months before the accident. He was asked if he had received reports prior to the accident herein that other people had slipped and fallen at the place where plaintiff had fallen, and he replied that "There were a few I remember, whether they were before or after, I couldn't say." He testified further that the standard practice for waxing the floor was as follows: The floor was washed; after it was dry a liquid wax known as San-a-sheen was applied to the floor with a mop in the same manner as one would damp-mop a floor; the floor was allowed to dry about 30 minutes and then it was buffed with a rotary buffing machine. He also testified that buffing removed "very little, if any," of the wax, and that after the buffing was finished the floor appeared shiny and glossy.

A witness, who was an expert in the manufacture and use of floor wax, testified that his company manufactures San-a-sheen, a water emulsion wax; the water evaporates and leaves a film of nonvolatile components; the principal film-forming components of San-a-sheen are wax, turpentine, and resin; the resin renders the film more rigid, decreases the tendency of the wax to mash or yield on impact, thereby making it more safe against "slip hazard"; under normal conditions the wax will not cake and after it is applied to an asphalt tile floor the floor is less slippery.

It is proper to direct a verdict for a defendant only when there is not sufficient evidence to support a verdict for the plaintiff. (See *Sokolow* v. *City of Hope*, 41 Cal.2d 668, 670 [262 P.2d 841].) In determining whether such a directed verdict is proper, the court must view the evidence in the light most favorable to plaintiff, accept every inference that legitimately may be drawn in favor of plaintiff, and disregard evidence which is in conflict with evidence favorable to plaintiff. (See *Sokolow* v. *City of Hope, supra*; and *Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177, 181 [140 P.2d 467].)

 The evidence shows, in part, that the floor had been waxed and buffed every Saturday for about 21 months preceding the accident; the floor was shiny and glossy; the buffing or polishing removed little if any of the wax; the area where plaintiff fell was more glossy than the area which was next to the counter and which led directly from the front door, through the bakery, to the restaurant. The evidence also shows that plaintiff was walking in a normal manner, that she suddenly slipped, and that after she had fallen she saw an eraser-like streak on the floor and a streak of wax on the side of one of her shoes. The person who waxed and polished the floor, the last time preceding the accident, did not testify. The jury might have inferred from the evidence that the part of the floor where plaintiff fell had not been used as much as the part of the floor next to the bakery counter, and that wax had accumulated on that less-used part of the floor, as a result of waxing the floor more than 80 times (each week for 21 months), to such an extent that an excessive amount of highly polished wax produced a slippery and dangerous condition. In view of the evidence that there was an eraser-like streak on the floor and a streak of wax on her shoe, the jury might have inferred that wax was unevenly and excessively applied at the spot on the floor where she suddenly slipped. Also, it might have inferred that defendant had received reports prior to this accident that other persons had slipped and fallen on the floor. The manager testified that he had had a few reports that other persons had slipped and fallen, but he did not remember whether the reports were before or after this accident. In viewing this evidence in the light most favorable to plaintiff, and in considering the demeanor of the witness, the jury might have inferred that the reports were before the accident. In *Nicola* v. *Pacific Gas & Elec. Co.*, 50 Cal.App.2d 612, it was said at pages 615-616 [123 P.2d 529]: ''The right of a proprietor of a place of business to wax a floor which the customers are expected to use is not one which upon any reasonable theory can be held to be superior to his duty to use ordinary prudence and caution to avoid injury to those who come to his premises by invitation. . . . Of course slipperiness is an elastic term. From the fact that a floor is slippery it does not necessarily result that it is dangerous to walk upon. It is the degree of slipperiness that determines whether the condition is reasonably safe. This is a question of fact.'' In *Cagle* v. *Bakers-*

*field Medical Group,* 110 Cal.App.2d 77 [241 P.2d 1013], plaintiff slipped and fell on a highly polished "marbleized tile" floor that had been polished once every two weeks during a period of six weeks before the accident; there was no foreign substance on the floor; and judgment for plaintiff was affirmed. The court therein, at page 81, quoted from *Nicola* v. *Pacific Gas & Elec. Co., supra,* and then said: "From the decision in that case it might be held that under proper circumstances, considering the type of floor and the type of patrons using the floor, a jury might well find that the application of any wax at all might be a violation of the duty to use ordinary prudence and caution to avoid injury." In *Sanders* v. *MacFarlane's Candies,* 119 Cal.App.2d 497, 501 [259 P.2d 1010], plaintiff slipped and fell on a polished floor which was similar to asphalt tile; while her hands were on the floor they "sort of stuck to the floor," and she could feel wax on her hands; the janitor who took care of the floor did not testify; among his supplies were liquid wax and a mop; no foreign substance was on the floor; and the judgment of nonsuit was reversed. The court therein held (p. 502) that there was "sufficient evidence tending to show that the floor had been waxed in a manner not reasonably safe for defendant's invitees . . .." It was also stated therein at page 501: "Storekeepers are under duty to keep the floors of their premises reasonably safe for the business invitees who must pass over them. [Citation.] If a storekeeper has a floor waxed or polished it must be done in such a manner that it remains reasonably safe for his invitees. [Citations.] When an unsafe condition which causes injury to an invitee has been created by the owner of the property himself or by an employee within the scope of his employment, the invitee need not prove the owner's notice or knowledge of the dangerous condition; the knowledge is imputed to the owner." ▮ In the present case the question as to whether the condition of the floor was reasonably safe was a question of fact for the jury. It was error to instruct the jury to return a verdict for defendant.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.