325 P.2d 819

Max GOODMAN and Anne Pearl Goodman, husband and wife, Appellants,

v.

Sidney A. CARSON, Appellee.

No. 6323.

Supreme Court of Arizona.

May 14, 1958.

178

Moore & Romley, Anthony T. Deddens and Jarril F. Kaplan, Phoenix, for appellants.

Marvin Johnson, Phoenix, for appellee.

PHELPS, Justice.

This is an appeal from a judgment in the sum of $29,000 in favor of Sidney A. Carson, appellee, hereinafter designated as plaintiff, and against Max Goodman and Anne Pearl Goodman, his wife, appellants, hereinafter designated as defendants.

The facts are that in July 1953 plaintiff was in the employ of defendant Max Goodman and, at the request of Goodman, the plaintiff accompanied him on a business trip from Phoenix to Albuquerque. Goodman lives in Los Angeles and on his

way to Albuquerque picked plaintiff up at Phoenix. They went to Albuquerque in defendants' Cadillac automobile. After concluding their business in Albuquerque on July 13 they left Albuquerque around 5:30 p. m. for Phoenix via Belen, Socorro and Springerville. Shortly after midnight on July 14 they had reached a point some 12 or 13 miles east of Springerville when they met an automobile and trailer on or at the end of a curve in the road. The road at that point was approximately 25 or 30 feet in width having a narrow two-lane pavement thereon. The eastbound car with a house trailer attached was occupying a part of the north half of the paved portion of the road and the trailer attached thereto was weaving. As the two cars approached each other defendant pulled to the right and his right wheels ran onto the north shoulder of the highway consisting of volcanic cinders causing said wheels to sink into the cinders. It continued upon this shoulder for a distance of 150 feet. Defendant was attempting all the time to get it back on the pavement but when he succeeded in doing so it skidded diagonally across the road and into an arroyo 60 to 80 feet below the level of the highway. Both plaintiff and defendant were injured. We are in no way concerned with the evidence in this case except as to its admissibility. It is upon this issue alone that this decision will rest.

In their appeal from the above judgment defendants have assigned several errors which we will consider in the order presented. First, it is claimed that the trial court erred in admitting, over the objection of defendants, the testimony of plaintiff that: (a) the defendant Goodman could not have stopped his car when the other car came towards him even if he had put on his brakes, and (b) there was no peril of being struck by the oncoming car even if Goodman had kept going straight ahead. " 'The general rule of law is that witnesses must state facts within their knowledge, and not give their opinions or their inferences. * * *' " Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130, at page 143, 65 P.2d 35, at page 41. Buehman v. Smelker, 50 Ariz. 18, 68 P. 2d 946, dealt with practically the identical questions here involved and held them to be improperly admitted in that case. We therefore hold that it was error to admit the above testimony over defendants' objection.

Assignment No. I under subdivision (c) thereof also claims it was error to permit plaintiff to testify concerning the speed defendants' car was traveling at the time of the accident. This testimony was based exclusively upon experiments made by plaintiff and his attorney shortly before the trial. Plaintiff had

testified shortly after the accident that Goodman was going about 50 miles per hour at the time of the accident. The testimony elicited from plaintiff at the trial was to the effect that the speed of defendants' car at the time of the accident *"had to be better than 65 miles per hour."* Such testimony was especially prejudicial for the reason that it was based upon an experiment made by plaintiff and his attorney more than two and one-half years after the accident under conditions entirely dissimilar to those existing when the accident occurred. The cars were different. There was no evidence as to the condition of the brakes on the two cars. The accident occurred in the summer time. At the time of the accident there were soft shoulders along the north side of the road consisting of volcanic cinders. When the experiment was made it was winter; snow was on the ground; the ground was frozen and the shoulders were hard. Furthermore, plaintiff did not qualify as an expert to give such testimony.

■ We have repeatedly held that testimony based upon experiment is not admissible unless the conditions under which the experiments were conducted are shown to be substantially the same as those existing at the time the accident occurred and which conditions it is claimed caused such accident, and upon which the action of negligence is based. Glowacki v. A. J. Bayless Markets, 76 Ariz. 295, 305, 263 P.2d 799, 805; Ong v. Pacific Finance Corp., 70 Ariz. 426, 428, 222 P.2d 801, 803; Broderick v. Coppinger, 40 Ariz. 524, 527, 14 P.2d 714, 715. It is also the law that in order to justify the admission of such evidence the witness must be shown to be an expert upon the subject about which he is called to testify. 20 Am.Jur., Evidence, §§ 783 and 784; 32 C.J.S. Evidence § 589. Plaintiff was not shown to be expert upon the subject about which he testified. The admission of such evidence was prejudicial and constituted reversible error. Assignment No. II has been thoroughly discussed above.

■ Considering next Assignment No. III, we are of the view that counsel for plaintiff went beyond the bounds of propriety, both in assuming in his question that defendants' negligence caused plaintiff's injuries, and in his response to defendants' objection thereto in again asserting that they were in court because defendant was negligent. The court instructed the jury to disregard counsel's remarks. Inasmuch as this case must be reversed as above indicated it is unnecessary to decide whether counsel's conduct constituted reversible error. We would suggest that such assertions should be avoided at all times for the reason that no one can say what effect it had upon the jury or whether the instruction of the court removed any wrong impression it may have created.

■ Assignment No. IV charges that counsel for plaintiff was guilty of misconduct in his argument to the jury. While we agree it was misconduct, inasmuch as no objections to counsel's conduct were interposed before the court submitted the case to the jury, we will follow our unbroken rule that where no objection is made in the trial court, we will not consider such assignment on appeal. Counsel for defendants argues, however, that the question was submitted to the trial court in supporting affidavits to defendants' motion for a new trial; that the trial court had an opportunity to, and did, rule upon it; and that, therefore, it is properly a part of the record on appeal and subject to our consideration. Defendants cite no authority in support of this proposition, and we have not met with success in our search for such authority. Therefore, since it is unnecessary to a decision in this case, the court reserves ruling thereon.

Assignments V and VI charge error of the trial court in denying defendants' motion for a new trial. It is clear beyond the peradventure of a doubt that the court erred in denying defendants' motion for a new trial upon the ground that it admitted evidence that we have hereinabove declared to constitute reversible error. The further ground assigned that the verdict was excessive and influenced by passion and prejudice is no longer material since the case is being reversed and remanded for a new trial.

Judgment reversed and remanded for a new trial.

UDALL, C. J., and WINDES and JOHNSON, JJ., concurring.

STRUCKMEYER, Justice (dissenting).

There is ample evidence from which the jury could find that the defendant's neglect was the proximate cause of the accident and injuries to the plaintiff. The road being traveled by the plaintiff and the defendant was in poor condition and undergoing repairs at various places. The plaintiff had several times requested the defendant to slow down. Just prior to the accident the defendant was driving between 60 and 80 miles an hour. The eastbound car with its house trailer attached was observed by the plaintiff some 1,800 feet in advance of the point of meeting. Nevertheless, the defendant did not reduce his speed when attempting to pass the eastbound vehicle. The defendant applied his brakes only after turning onto the shoulder, then in turning back onto the paved portion of the road, either hit a chuckhole or the edge of the pavement and lost control of the car.

The foregoing facts, while disputed, are consistent with the announced rule of this court that on appeal the evidence will be taken in the light most favorable to sus-

taining the verdict and judgment. Bryan v. Southern Pacific Company, 79 Ariz. 253, 286 P.2d 761, 50 A.L.R.2d 1; Rivera v. Hancock, 79 Ariz. 199, 286 P.2d 199; Sanders v. Beckwith, 79 Ariz. 67, 283 P. 2d 235.

The majority of this court rely on certain errors in the introduction of evidence for reversal of this case. The first two involve the application of the opinion rule, being respectively (a) whether defendant could have stopped his car when the other car came toward him, and (b) whether the defendant's car was in peril of being struck if it had gone straight ahead.

It should be noticed that the opinion rule has been the subject of considerable criticism. The outstanding authority in the field of evidence has this to say:

"The Opinion rule day by day exhibits its unpractical sublety and its useless refinement of logic. Under this rule we accomplish little by enforcing it, and we should do no harm if we dispensed with it. We accomplish little, because, from the side on which the witness appears and from the form of the question, his answer, i. e. his opinion, may often be inferred. We should do no harm, because, even when the final opinion or inference is admitted, *the inference amounts in force usually to nothing unless it appears to be solidly based on satisfactory data,* the existence and quality of which we can always bring out, if desirable, on cross-examination. Add to this that, under the present illiberal application of the rule, and the practice as to new trials, a single erroneous ruling upon the single trifling answer of one witness out of a dozen or more in a trial occupying a day may overturn the whole result and cause a double expense of time, money, and effort; and we perceive the absurdly unjust effects of the rule. Add, finally, the utter impossibility of a consistent application of the rule, and the consequent uncertainty of the law, and we understand how much more it makes for injustice rather than justice. It has done more than any one rule of procedure to reduce our litigation towards a state of legalized gambling." 7 Wigmore, 3d Ed. pages 26 and 27, section 1929. [Italics mine.]

The foregoing statement is particularly applicable to this case because the data upon which the opinions were founded were wholly before the jury.

In the first instance the exact question asked was:

"Q. Was Mr. Goodman's car able to stop if, when this car came toward him, he had put on his brakes? A. No, sir.

"Mr. Kaplan: Object to that as calling for a conclusion, Your Honor.

"The Court: The answer may stand."

The defendant thereafter testified on cross-examination:

"A. When I first saw the car and the trailer, it seemed to me it was approximately about 200 feet. It could have been more or less.

"Q. And it was swaying at that time, sir? A. I didn't notice it at that particular moment. As we were both traveling, it was coming towards me and I was going towards it, probably between 75 or 80 feet is when I noticed it was over on my side of the highway, and the trailer was weaving.

"Q. It was coming towards you and you were coming towards it, is that right, sir? A. Yes.

"Q. And you were going at about 55 or 60, you said, is that correct, sir? A. I did not say that.

"Q. Well, how far do you say, sir?

"Mr. Kaplan: What?

"Mr. Johnson: I mean how fast do you say. Excuse me.

"The Witness: I would say I was going between 35 or 40 miles an hour, maybe 45."

It thus appears by the defendant's own testimony that when the two cars were 75 or 80 feet apart, the eastbound car came into the defendant's line of traffic. The opinion of the plaintiff that the defendant's car could not have been stopped was so obviously correct that the jury could not have been misled thereby.

Indeed, were it possible to conclude that the jury could have been misled into believing what was manifestly true, there is still no possible interpretation of the answer which would prejudice the defendant. Nothing can be clearer than this: that if the approaching car entered into the defendant's line of traffic and as the plaintiff says, they could not have stopped, the defendant was justified in turning off the paved portion of the highway, for the alternative was a head-on collision.

The second statement of the plaintiff that there was no peril of being struck by the oncoming car if defendant had kept going straight ahead is, in my opinion, an even more fanciful ground for reversal than the first. The incident to which error is assigned arose in this manner.

"Q. Mr. Carson, or Sidney, were you at anytime or was Mr. Goodman at anytime in peril of being struck by this car if he had kept going straight?

"Mr. Kaplan: Object to that as calling for a conclusion, also, Your Honor. * * *

"The Court: Objection overruled. He may answer.

"The Witness: Would you repeat that, please, sir?

"By Mr. Johnson: Were you at anytime prior to Mr. Goodman's turning off to the right, were you before that in peril of colliding with the car coming the other way?

"Mr. Kaplan: Same objection.
"The Court: Same ruling.

"The Witness: I wouldn't say, because I would say we wouldn't have hit him head on, no. We could have missed him.

"By Mr. Johnson: Well, Sid, if you hadn't turned at all, would you have just gone right past him? A. I am not sure, sir."

As can be seen from examination of this testimony, the plaintiff *did not* at this time say that there was no peril of being struck by the oncoming car if the defendant had kept going straight ahead. What the plaintiff *did* say was that he was not sure whether they would have hit if the car had not been turned.

The testimony above quoted was preceded by other testimony of like import which entered into evidence without objection. *Previously,* the plaintiff was asked these questions and gave these answers:

"Q. Sidney, if this car stayed right where it is with relation to the center line and it came toward you, was it close enough to the path of travel of this car [indicating] so that · they would have collided when they came even with each other? A. Well, they could have missed each other, if that is what you mean.

"Q. You mean they would have missed each other? A. Yes, sir.

"Q. Without turning of any kind? A. Yes, sir."

Since substantially the same evidence was elicited from the witness *without objection* and the opinion of the witness was already before the jury, the mere repetition of the testimony could add nothing to that which was not already in evidence.

As illustrative of how really fanciful the claimed error actually is: Counsel for the defendant elicited the same information by a question in a somewhat different form.

"Q. Yes, it appeared to be weaving and it was in your lane of travel. A. Just slightly, yes, sir.

"Q. Just slightly. And you clearly remember that there was sufficient room on the right half of the pavement to go around the car and house trailer without going off the paved portion? A. Yes, sir."

And later asked the same question of his own client, Goodman.

"Q. Mr. Goodman, was there sufficient room on your half of the roadway to continue on the paved portion

of the highway and pass this approaching car and house trailer that was on your side of the road? A. I did the best that I could do at the time. I don't know whether there was sufficient pavement or not. As far as I can recall, when I turned, I must have run off it, so there couldn't have been sufficient."

The further point is made that the following incident constituted misconduct on the part of counsel for the plaintiff.

"Q. Have you incurred any doctor or hospital bills as a result of these injuries *and this negligence of Mr. Goodman?*

"Mr. Kaplan: Now, just a minute, if the Court please. We object to that as calling for a conclusion and a highly improper question, assuming that Mr. Goodman was negligent, *when the evidence will not so show.*

"Mr. Johnson: *Well, we sure would contest that,* but we will withdraw it.

"Mr. Kaplan: *I think counsel knew that it was improper,* and I ask the Court to admonish counsel to cease—

"Mr. Johnson: Of course I didn't know. What do you mean 'improper conduct?' *We are in here because he is negligent,* if the Court please." [Italics mine.]

At this point, it is apparent that none of the italicized portions of this colloquy are

strictly proper. The incident was then further concluded in this manner.

"Mr. Kaplan: Now, if the Court please, I have a motion to make.

"The Court: All right, you may step forward and make your motion. [Thereupon the following proceedings were had without the hearing of the jury:]

"Mr. Kaplan: If the Court please, I at this time move the Court for a mistrial upon the grounds of misconduct of counsel as shown in the record.

"The Court: All right, the motion will be denied. [Thereupon the following proceedings were had within the hearing of the jury:]

"The Court: The jury is instructed, of course, to disregard the remarks of counsel, and the jury are again instructed that the evidence upon which any verdict might be based will be the testimony of the witnesses from the witness stand only.

"All right, you may proceed."

I do not approve nor condone what has here occurred. However, the question to be determined is whether the trial court abused its discretion in failing to grant a mistrial. The rule of law is adequately stated in 88 C.J.S. Trial § 158 b, pp. 306, 307:

"* * * Thus, it is for the judge to determine, in the exercise of his discretion, whether counsel has transgressed the bounds of professional duty, and whether the misconduct if any, is prejudicial, and whether a mistrial should be granted."

In the light of the plain admonition and the court's subsequent charge to the jury:

"Now, unless the plaintiff has established by a preponderance of the evidence that defendant Max Goodman was negligent in one or more of the particulars alleged in the complaint, which has been read to you, and that such negligence was the direct and proximate cause of the injuries and damage to the plaintiff, your verdict must be for the defendant."

I am unable to believe that the jury was misled to the defendants' prejudice.

Defendants' assignment of error No. 1 so far as is pertinent reads:

"The Trial Court erred in admitting, *over the objection of defendants,* the conclusions of the plaintiff that:
*     *     *     *     *     *

"c) the speed of the defendants' automobile at the time of the accident 'had to be better than 65 miles per hour' * * *." [Italics mine.]
This portion of the assignment is wholly without merit. No objection was made to the question which elicited the answer of which is now complained, and no motion to strike was made then or at any time prior to the submission of the case to the jury.

In order that there can be no doubt of what actually occurred, the exact testimony is reproduced from the reporter's transcript. It should be pointed out, first, however, that the incident occurred on redirect examination after defendant had impeached the plaintiff's testimony concerning the speed of the defendant's vehicle by showing that he had previously answered in his deposition that defendant was going 50 miles an hour instead of 60, 70, or 80. On redirect examination, counsel brought out from the plaintiff that he had driven to the scene of the accident a week before the trial in an attempt to re-establish in his own mind what the speed was on the night of the accident and repeatedly drove over the road while at the same time watching the speedometer.

"Q. Did you attempt to simulate the approximate same violence in these tests? A. Yes, sir.

"Q. As a result of these tests, tell what you discovered, if you please.

"Mr. Kaplan: Now, just a minute, if the Court please. May I inquire on voir dire?

"The Court: Yes, you may proceed on voir dire.

"By Mr. Kaplan: Q. When you conducted these tests with Mr. John-

son, did your car go off onto the soft shoulder there? A. We went slightly off the road a little bit, different speeds up to 65 miles an hour.

"Q. Off onto the shoulder? A. Off onto the shoulder and back on.

"Q. Is the shoulder the same now as it was then? A. I don't remember sir.

"Mr. Kaplan: *Object to the question as calling for a conclusion and incompetent, irrelevant, and immaterial.* [Italics mine.]

"Mr. Johnson: Well, let me ask this, if I may, to cure it.

"By Mr. Johnson: Q. Is the shoulder any different now as far as you know? A. There is snow on it now.

"Q. Yes. And was it fairly soft? A. The snow was soft. It was fresh snow.

"Q. And was the ground fairly soft? A. No, sir. The ground was hard then.

"Q. But was it fairly slick along the side? A. Yes, sir, very slick.

"Q. Was it slushy? A. Yes, sir.

"Q. And what is the highest speed at which we went over that? A. Sixty-five miles an hour.

"Q. Was that the highest speed at all? A. Yes, sir.

"Q. Did you make a turn off to the right at that time at 65 miles an hour to see the effect? A. Yes, sir.

"Q. What is your testimony now as to the speed at which Mr. Goodman was going the night of July 13th? A. It had to be better than 65 miles an hour."

As can be seen, the objection, as made, was predicated on the fact that the witness did not remember whether the shoulders were the same at the time of the test and at the time of the accident. When the condition of the shoulder was determined and the direct question asked as to the speed at which defendant was going, no objection was offered. The rule in this jurisdiction that this court will not consider an objection that was not first made in the lower court has been firmly adhered to in numerous recent cases. Jost v. Ross, 82 Ariz. 245, 311 P.2d 840; Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786; Pioneer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740, 41 A.L.R.2d 668; Tang v. Avitable, 76 Ariz. 346, 264 P.2d 835; Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262. I am unable to discover why it should be relaxed in the present case.

Moreover, were it possible to conclude that the admission of this statement was erroneous, it is clearly apparent that it was not prejudicial. Plaintiff testified nine times, three on direct examination and six

times on cross-examination that the defendant was driving 60, 70, or 80 miles an hour.

1. "Q. Well, Sid, in this particular instance, are you able to give us an estimate as to approximately how fast he was going, Mr. Goodman, driving the car with you in it immediately prior to your having this collision, or this wreck, rather? A. Well, to get right—We were going very fast, I mean—

"Q. You were going very fast? A. Yes, sir.

"Q. Well, what do you mean 'very fast'? Do you have any idea what it was in terms of miles you traveled? A. Well, it could have been 60, 70, 80."

2. "Q. All right, you say you believe the man was going 60, 70, 80 miles an hour so far as you are concerned, is that correct, sir? A. Yes, sir."

3. "Q. He pulled to the right. Had he, up to the point of seeing that car, diminished his speed from where you say he was going very fast, 60, 70, or 80, before that? A. No, sir."

4. "Q. If I understood your testimony correctly, Mr. Carson, I think you said that Mr. Goodman was traveling 60, 70, or 80 miles an hour immediately prior to the collision, is that right? A. Yes, sir."

5. "Q. How fast? A. As I said before, maybe 60, 70.

"Q. Or 80 miles an hour? A. Or 80.

"Q. Is that right? A. Yes, sir."

6. "Q. How fast was he going then when he went off the shoulder?

A. As I say—

"Q. The same 60, 70, or 80 miles an hour, right? A. Approximately."

7. "Q. You say Mr. Goodman was going 60, 70, or 80 miles an hour. It was considerably closer, wasn't it? A. Yes, sir."

8. "Q. And you clearly remember that when Mr. Goodman—When you first saw this car just immediately prior to the accident, Mr. Goodman was going 60, 70, 80 miles an hour. You clearly remember that? A. Yes, sir."

9. "Q. And you clearly remember that he was still going the 60, 70, or 80 miles an hour when he went off the road and into the shoulder? A. Yes, sir."

It is impossible for me to believe the tenth time the plaintiff stated the speed of defendant's automobile that thereby somehow defendants were prejudiced.

The defendants' second assignment of error so far as it is here pertinent reads:

"The trial Court erred and committed an abuse of discretion in admitting, over the objection of the defendants, evidence of experiments conducted by plaintiff and his counsel outside of the presence of the jury, and the conclusions of the plaintiff based upon such experiments, that the speed of the defendant's car 'had to be better than 65 miles an hour' * * *."

It is to be noticed that the defendants' assignments of error 1 and 2 overlap to the extent that they attack the statement of the plaintiff concerning the speed of the defendant's car. This has already been discussed and needs no further amplification. The further point is made both by defendant and the majority of this court that it was error to admit evidence of experiments conducted by the plaintiff some 2½ years after the accident occurred.

As stated, plaintiff testified to the speed of the automobile on direct examination and on cross-examination. Defendants thereafter sought to impeach plaintiff by establishing that when his deposition was taken approximately ten months before the trial, plaintiff stated that the speed of defendant's automobile was 50 miles an hour. On redirect examination, counsel for the plaintiff attempted to rehabilitate the witness [plaintiff] by establishing the reason why he now testified to a higher rate of speed than he had at the time of his deposition. This incident which is the basis for defendants' assignment of error No. 2 then occurred:

"Q. Sid, have you gone up to try to yourself more nearly ascertain the exact speed at which Mr. Goodman was going? A. Yes, sir.

"Q. What have you done in that regard, Sid? A. Went back and forth at different speeds.

"Q. When did you do that? A. Last week, sir.

"Q. Well, describe more precisely, if you please, what you did to try to reestablish in your own mind what this speed was in miles per hour looking at a speedometer.

"Mr. Kaplan: If the Court please, object to that as immaterial and incompetent, what happened last week.

"Mr. Johnson: If the Court please, if it is a basis for his opinion as to what happened *and to explain the difference in his testimony in his deposition and now,* we believe he should be permitted to explain himself when he now says the man was going 60, 70, or 80 and then he said he was going 50, 55. [Italics mine.]

"The Court: Well, with the foundation, you may proceed.

"Mr. Johnson: I don't understand. Does Your Honor want me to lay a further foundation?

"The Court: No, just proceed on your questioning as to the situation, circumstances, and what was done."

First, it is to be observed that if the defendants were objecting to a showing of the experiment, the objection was premature. What happened last week could be both material and competent if the experiment was conducted under similar circumstances. This the learned trial judge clearly understood and therefore properly over-ruled the objection. If the facts, as they did, subsequently established that the circumstances were dissimilar, a timely objection should have then been made to the conclusions based thereon. As has been pointed out, no such objection was made.

Second, the plaintiff's position is that the testimony was admissible for the purpose of rehabilitaton—as counsel said "to explain the difference in his testimony." I agree with the majority of this court that ordinarily opinions are not admissible based on experiments conducted under dissimilar circumstances; nevertheless, the evidence was certainly admissible to establish why the witness changed his testimony. Evidence which is clearly inadmissible for one purpose may be entirely proper for another purpose, and it is admissible for the latter purpose even though the jury may erroneously use it for other purposes. This court said in Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262, 266:

" * * * Evidence may be clearly inadmissible for one purpose yet the same evidence may be proper and admissible for some other legitimate purpose. 20 Am.Jur., Evidence, section 263."

Evidence of the reason why the witness changed his testimony has obvious relevancy in the light of the well-known instruction and rule of law on which it is based, that the jury has the right to wholly disregard the testimony of a witness who has willfully sworn falsely to any material fact except insofar as it may be corroborated by other credible evidence. Prior v. Territory, 11 Ariz. 169, 89 P. 412; Rowe v. Goldberg Film Delivery Lines, 50 Ariz. 349, 72 P.2d 432. Here the credibility of the witness was so severely attacked by his prior contradictory statement that if it were not explained, the jury might well have disregarded his testimony entirely.

Where an alleged contradictory statement can be explained, the assailed witness is entitled to make an explanation and should be given the opportunity to do so on redirect examination.

"In accordance with the logical principle of Relevancy, the impeached witness may always endeavor to explain away the effect of the supposed inconsistency by relating whatever circumstances would naturally remove it. The contradictory statement indicates on its face that the witness has been

of two minds on the subject, and therefore that there has been some defect of intelligence, honesty, or impartiality on his part; and it is conceivable that the inconsistency of the statements themselves may turn out to be superficial only, or that the error may have been based not on dishonesty or poor memory but upon a temporary misunderstanding. To this end it is both logical and just that the explanatory circumstances, if any, should be received: * * *." 3 Wigmore, 3d Ed., 737, section 1044.

The rule that a witness may explain away the effect of a supposed inconsistency by relating the circumstances which would naturally tend to remove it, is supported by numerous authorities following the body of the text above quoted as well as in more recent cases collected in 98 C.J.S. Witnesses §§ 419 and 621. Certainly, the juries of this country are not so devoid of simple intelligence as to be unable to perceive that an experiment made under dissimilar circumstances has little or no probative force in support of an opinion.

After a thorough examination of the transcript, I have arrived at the conclusion that this case was in every respect thoroughly and capably tried by competent and experienced counsel. The transcript shows that three days were consumed in the trial of this cause. No objection whatsoever was made by the plaintiff to the introduction of any of the defendants' evidence, either on direct or cross-examination. Every instruction requested by the defendants, totalling 15 in number, was given to the jury by the trial judge and no exception was taken to any portion of the court's charge to the jury.

If trivialities such as these are grounds for reversal, then the course of litigation is endless indeed; no judgment of an inferior court is safe from attack and this court will inevitably be plagued by a host of meritless appeals.

I think the judgment should be affirmed.