502 P.2d 1089

**Osvaldo MARTINEZ and Maria Martinez, husband and wife, Appellants,**

v.

**LUCKY STORES, INC., Appellee.**

**No. 2 CA–CIV 1157.**

Court of Appeals of Arizona, Division 2.

Nov. 14, 1972.

Rehearing Denied Dec. 20, 1972.

Review Denied Jan. 16, 1973.

O. Mark Marquez, Tucson, for appellants.

Spaid, Fish, Briney & Duffield by Richard Duffield, Tucson, for appellee.

HATHAWAY, Judge.

This is an appeal from a judgment entered on a directed verdict in favor of defendant and against the plaintiffs at the close of the plaintiffs' lawsuit for personal injuries.

---

Appellants, Mr. and Mrs. Osvaldo Martinez, plaintiffs below, entered defendant's Lucky Store at Southgate Shopping Center on the evening of March 5, 1969 to purchase groceries. They attempted to cash a check in the store but were unable to do so because defendant did not have enough cash on hand. Upon leaving the store, while passing the bakery section, Mrs. Martinez slipped and fell. This lawsuit for her personal injuries was based upon defendant's alleged negligent maintenance of its floors.

The only question presented upon appeal is whether the trial court erred in directing a verdict against the plaintiffs. The court is justified in directing a verdict only where the evidence is insufficient to support a contrary verdict or so weak that the court would feel constrained to set aside such a verdict on a motion for a new trial. Casey v. Beaudry Motor Co., 83 Ariz. 6, 315 P.2d 662 (1957). The question of negligence must go to the jury if a party has presented evidence upon which reasonable men could differ as to its tendency to support the position of the party sought to be directed out. Matsumato v. Arizona Sand and Rock Co., 80 Ariz. 232, 295 P.2d 850 (1956). We are of the opinion that the plaintiffs presented sufficient evidence to withstand the motion for directed verdict and that the judgment must be reversed.

 To establish a prima facie case of negligence the plaintiff must show (1) that there was a duty on the part of defendant to maintain the floor in a reasonably safe condition; (2) a breach of that duty; (3) that the plaintiff slipped as a result of defendant's negligence and (4) that the defendant knew or ought to have known of the dangerous condition of the floor.[1] The trial court relied upon Ong v. Pac. Finance Corp., 70 Ariz. 426, 222 P.2d 801 (1950), a slip and fall case, as authority for its direction of verdict. In *Ong,* the plaintiff testified that all she knew about the place on the floor where she fell was that it was slippery. She also testified that she had seen puddles of a liquid substance on the floor near where she fell. She admitted that she did *not* see the liquid substance at the point on the floor where she had slipped and fallen. A week had elapsed since the floor had been waxed and testimony revealed that the wax had been worn off by foot traffic. Plaintiff attempted to buttress her testimony by that of a woman who had slipped and fallen while behind the counter in the same office a year after Mrs. Ong's fall, who testified that she noticed caked wax near the place where she [the witness] had fallen. However, she did not testify that she had slipped on the caked wax.

 Conversely in the case at bench, the evidence reveals that there was a footlong scratch on the floor at the place where Mrs. Martinez had slipped and also, she noticed that the floor was slippery. Mrs. Leticia Cantu who was in the store when Mrs. Martinez fell, testified that she had difficulty walking inside the store, ". . . all the time that I was there I felt my shoes slippery." Testimony was elicited from defendant's cashier that she had refrained from wearing leather heels because they had a tendency to be slippery on *defendant's floors.* She also observed that Mrs. Martinez had on ". . . neolite heels, which have a tendency to slip on these floors." The defendant's floor had been waxed on the day prior to the accident. The plaintiff testified that a young man, presumably an employee of the defendant, stated to an assistant while they were investigating the accident that the

---

1. The duty of care owed to an invitee (the plaintiff) by the defendant is: ". . . not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." W. L. Prosser, Law of Torts § 61 p. 393 (4th ed. 1971).

floor was slippery.[2] All evidence considered, we believe a jury question was presented as to whether defendant maintained its floors in an unreasonably slippery condition. Hlavaty v. Song, 107 Ariz. 606, 491 P.2d 460 (1971); Prophet v. S. H. Kress Co., 106 Ariz. 504, 479 P.2d 167 (1970) (issue of contributory negligence properly submitted to jury because of plaintiff's admissions as to prior fall while wearing same shoes); Baker v. Manning's, Inc., 122 Cal.App.2d 390, 265 P.2d 96 (1953); Nicola v. Pacific Gas and Electric Co., 50 Cal.App.2d 612, 123 P.2d 529 (1942); Chase v. Parry, 326 P.2d 809 (Okl.1958). Negligence and contributory negligence are covered by the same standards. W. L. Prosser, Law of Torts § 65 (4th ed. 1971); Restatement (Second) of Torts § 464 (1965).

Where a floor is maintained in a slippery condition it can be expected that a person may slip and fall. Whether the defendant maintained its floor in an unreasonably slippery condition causing plaintiff-wife's injuries, becomes a question to be determined by the jury. Baker v. Manning's, Inc., *supra*. (The court ruled that in view of the evidence that there was a streak of wax on the floor, the jury might have inferred that wax was unevenly and excessively applied at the spot on the floor where she fell.) Sherman v. Arno, 94 Ariz. 284, 383 P.2d 741 (1963). The employees' statements regarding the slippery condition of the floor are imputable to Lucky Stores under well-established agency principles. In re Estate of Milliman, 101

Ariz. 54, 415 P.2d 877 (1966); Hays v. The Bank of Arizona, 57 Ariz. 8, 110 P.2d 235 (1941).

For the foregoing reasons, the judgment is reversed and remanded for new trial.

KRUCKER, C. J., concur.

HOWARD, Judge (dissenting).

I am unable to agree with the majority opinion. Before appellants can recover they must show that the floor was dangerously slippery. The duty owed by the appellee to the appellants was to exercise ordinary care in the application and selection of the material used in treating its floor and in the maintenance of the floor thereafter. Ong v. Pacific Finance Corporation of California, 70 Ariz. 426, 222 P.2d 801 (1950). The evidence in this case falls woefully short of indicating that the floor was "dangerously slippery." It consisted of Mrs. Cantu's statements that while in the store "I felt my shoes slippery"; that "The floors were brillant"; and that Mrs. Martinez did fall and made a scratch or skid mark on the floor where she fell. The testimony of the cashier quoted by the majority is taken out of context. The cashier, who no longer works for appellee, testified on direct examination that she saw the shoes Mrs. Martinez was wearing and that they had a "slippery sole." She testified that she wore sneakers at work stating: ". . . I have worked for 22 years off and on in grocery stores, and when you are running around and if you arent' sure footed, you can fall, no matter

---

2. The plaintiff testified that she had difficulty understanding English and the pertinent portions of the testimony appear as follows:

"Q. During that time, were you discussing the floor?

A. Well, since I don't understand English too well, it seemed like one of the boys asked the other to go check the condition of the floor where I had fallen.

Q. All right. And what happened after that?

A. The boy came and he answered that the floor was slippery and brillant.

Q. Now, which one of these boys made that statement?

A. The Mexican boy.

Q. Did he say it in English or did he say it in Spanish?

A. He stated that in English, because the other boy didn't understand Spanish.

Q. All right. Will you tell me what he said in English?

THE INTERPRETER: She said, shine on the floor. Shine on the floor."

what kind of floor you are on, and so I wear sneakers to work in so I don't slip and fall." Believing that this testimony conflicted with an earlier statement that she had given, appellants were allowed to cross-examine this witness as a hostile witness. She was asked whether or not she made the following statement:

"So we looked the floor over and found nothing but a mark from her shoes. No wetness, no produce, no nothing. She was no more than two steps out of the bakery. She had on shoes, neolite heels, which have a tendency to slip on these floors. I know, because I was wearing them and switched to sneakers. All this occurred in the evening. The mark from her shoes was about a foot long and looked like any skid marks."

The cashier stated that she did make the foregoing statement, but went on to explain, when questioned by appellee's counsel, that the floor was not in a slippery condition at the time of the accident; that she was wearing tennis shoes in her new job ". . . Because on any floor, if you are running around or something, when you are clerking you have certain duties to perform, and it is easy to slip if you aren't sure footed."

The gist of the cashier's testimony was that it is easier to slip when wearing Neolite or leather heels and soles than it is when wearing tennis shoes. To equate this testimony to proof of the fact that the floor was in a dangerously slippery condition is unjustified.

The testimony and evidence in this case is similar to that rejected by the Oklahoma court in J. C. Penney Company v. Hoover, 414 P.2d 293 (Okl.1966) wherein the court stated at page 296:

"Extrinsic evidence clearer and more convincing than testimony by plaintiff and her companion, subjectively describing the floor as 'slick', is necessary. Though this testimony was coupled with evidence of a mark apparently made by her skidding shoe, this to [sic] has been declared insufficient; Dixon v. Hart, 344 Ill.App. 432, 101 N.E.2d 282, 285. Presence of such a skid mark, while relevant, is not conclusive; 63 A.L.R.2d at 603–604."

A collection of cases sustaining the sufficiency of the evidence appears in 63 A.L.R.2d pp. 606 through 612. In S. H. Kress & Co. v. Evans, 70 Ariz. 175, 218 P.2d 486 (1950), the plaintiff's evidence indicated that the floor felt "slicky" to her and that when she arose after the fall her dress and stockings were soiled with oil and grease. The defendant's evidence was that it caused its floors to be dressed at least once a week with a product known as "Myco Sheen" and that its employees applied this product in twenty to thirty minutes whereas the sales representative for Myco Sheen testified it should take two to two and one half hours to apply the product to the floor and if not properly applied it might cause trouble.

In Lamb v. Purity Stores, 119 Cal.App. 690, 7 P.2d 197 (1932) there was evidence that at the exact spot where the plaintiff fell the floor was much damper with oil than in other places and that one of her stockings and dress became soaked with surplus oil.

In Nicola v. Pacific Gas & Elec. Co., 50 Cal.App.2d 612, 123 P.2d 529 (1942), in addition to testimony that the floor was shiny and appeared to be slippery, there was evidence that defendant had knowledge that two persons had previously fallen on the floor and it also appeared that defendant's manager had told the agent of the building that at times they had trouble with the slippery floor.

In Henderson v. Progressive Optical System, 57 Cal.App.2d 180, 134 P.2d 807 (1943), not only did the floor appear highly polished but there also was an excessive deposit of wax on the floor, the plaintiff testifying that her foot scraped up a por-

tion of the wax and a spot of wax was left on her shoe.

In Sanders v. MacFarlane's Candies, 119 Cal.App.2d 497, 259 P.2d 1010 (1953), plaintiff testified that she noted the floor appeared to be highly polished and that after she fell she felt the floor and it was waxy and sticky, and while still on the floor she heard a thump and discovered that another person had fallen.

In Baker v. Manning's, Inc., 122 Cal. App.2d 390, 265 P.2d 96 (1953), the evidence showed that there was excessive wax on the floor and other persons had fallen at the same spot.

In First Fed. Savings & Loan Ass'n of Miami v. Wylie, 46 So.2d 396 (Fla.1950), not only was there a skid mark on the floor where the plaintiff had slipped and fallen but there was an accumulation of wax on the bottom of the heel of the plaintiff's shoe.

In Pilgreen v. Hanson, 89 Ga.App. 703, 81 S.E.2d 18 (1954) later 94 Ga.App. 423, 94 S.E.2d 752 (1956), the court held that the plaintiff's complaint was sufficient when it alleged that there was a hump on the floor at the point where the plaintiff fell; that the floor had been made slippery by waxing and that insufficient lighting in the defendant's restaurant gave the floor at the point at which the hump was located an appearance of being flat and level.

There are other cases set forth in the annotation, but they are along the same vein, each case having something other than the fact of a fall and testimony that the floor looked brilliant or shiny. The same annotation at pp. 612 through 619 sets forth cases holding the evidence to be insufficient.

It was incumbent in this case for the appellants to show that the appellee was negligent in the waxing or care of the floor or that in the exercise of ordinary care it knew or should have known of a dangerous or slippery condition of the floor. I am unable to find any such evidence. I would affirm the decision of the trial court.