263 P.2d 799

GLOWACKI et ux.

v.

A. J. BAYLESS MARKETS, Inc.

No. 5631.

Supreme Court of Arizona.

Nov. 23, 1953.

Rehearing Denied Dec. 22, 1953.

Brown & Langerman, Herbert B. Finn, Phoenix, for appellants.

Moore & Romley, Phoenix, for appellee.

PHELPS, Justice.

This is an appeal from an order granting defendant-appellee's motion for judgment n. o. v.; from the judgment entered thereon and from an order denying plaintiffs-appellants' motion for a new trial. The parties will be hereinafter referred to as plaintiffs and defendant as they were designated in the lower court.

The facts are that on October 6, 1950, Mary Glowacki, wife of Joseph Glowacki joined as plaintiff herein, entered the store of defendant located at the corner of 19th Avenue and Osborn Road in this county and state, as an invitee for the purpose of purchasing groceries for the family. After plaintiff had obtained said groceries and was proceeding to walk through the aisles of the store leading to the cashier's counter to pay for said groceries preparatory to leaving the store, she stepped into a "puddle" of water approximately one and one-half feet in diameter and one-fourth inch, more or less, in depth causing her to slip and fall upon her back on the concrete floor from which she sustained a compression fracture or break of the 12th dorsal vertebra. Plaintiffs allege the injury is permanent in character and that Mrs. Glowacki has suffered and will continue to suffer great pain throughout her natural life, etc.

Action was brought in the superior court of Maricopa County and upon trial of the issues involved, the jury awarded plaintiffs a verdict in the sum of $1500. Upon motion of defendant judgment n. o. v. was entered for it and plaintiffs appeal to this court presenting nine separate assignments of error. Assignment No. 1 is based upon the order of the court granting defendant's motion for judgment n. o. v. Assignments 2, 3, 4, 5 and 9 are based upon the court's refusal to grant plaintiffs' motion for a new trial upon the grounds set out in the respective assignments. The remaining assignments, 6, 7 and 8, are based upon instructions given by the court upon request of defendant for the reasons set out therein.

We are of the view that the trial court committed a number of reversible errors during the course of the trial of this case. In order, however, to avoid extending this opinion unduly we will discuss one assignment rather fully and limit the discussion of the other assignments, in so far as possible, to merely pointing out the error or errors committed. We will first discuss assignment No. 5 which asserts that the court's denial of plaintiffs' motion for a new trial based upon its comment upon the evidence and upon the court's alleged rebuke of counsel in the presence of the jury, constituted reversible error and deprived plaintiffs of a fair and impartial trial. Specifically plaintiffs contend that the following remark of the court constitutes a comment upon the evidence:

"Thirty five years ago I was on a concrete job in the summertime. I am afraid that I am not sympathetic to the views that are being expressed."

In answer to this assignment of error counsel for defendant presents the proposition of law that the remarks of a trial judge during the course of a trial must be evaluated on the basis of the context and circumstances in which used. In support of this proposition of law, counsel contents himself with the statement that:

"The alleged comment on the evidence was made in overruling an offer of 'expert' testimony to prove how long the puddle of water had been on the floor prior to the accident. The offer was overruled; so, in fact it never became *evidence* in the case. * * * "

We agree with the correctness of the legal proposition above set forth but we do not agree that the solution of the problem presented is as simple as counsel indicates. Article 6, section 12, of the state constitution provides in part that:

"Judges shall not charge juries with respect to matters of fact nor comment thereon, but shall declare the law."

In order to determine whether the statement of the court above quoted amounts to a comment upon the evidence, let us briefly examine the circumstances, and the context in which the statement was made. The transcript of the evidence discloses that counsel for plaintiffs had sought at length, but unsuccessfully, to qualify the witness Keplinger to testify as an expert concerning the length of time the puddle of water, in which plaintiff slipped and fell, had been on the floor. The purpose of the evidence was to show it had been on the floor a sufficient length of time to charge defendant with knowledge of its presence in the event it were shown to have been poured or spilled on the floor by a stranger to the defendant.

In attempting to qualify Keplinger as an expert it was developed that the witness was a registered civil engineer in Arizona with twenty-one years' experience with the Arizona Highway Department, presumably at road construction; that he had also had experience with various types of concrete or cement floors in connection with the con-

struction of houses and buildings as engineer for subdividers, builders, owners, etc.; that he had inspected the floor in defendant's building where the accident occurred on two different occasions but had not at that time made any test concerning the length of time water would stand on the particular floor. The witness, in answer to questions propounded by counsel for plaintiffs and by counsel for defendant on voir dire, had testified that he had had experience with water standing on both waxed and unwaxed (concrete) floors both in casual observation and in testing, and its effect upon the color of the floor where permitted to remain thereon; that due to the water soaking into the pores of the concrete the color of the floor would begin to turn dark after water had stood upon it for a short time first in spots, then over the entire surface, and that it would become darker depending upon the length of time the water was permitted to remain thereon; that if water were poured on the floor it would probably stand there and if left long enough it would "soak in and evaporate". He testified further that from his experience and training he was able to tell what effect water would have if placed upon the particular floor in question; that a chemical analysis of the concrete floor was not necessary to enable him to tell its effect upon the floor.

In answer to questions by counsel for defendant on voir dire the witness testified that all concrete has the same basic reaction to penetration of water; that atmospheric conditions unless extreme would make no appreciable difference in the process of penetration; that if the variable was in the neighborhood of a hundred degrees it might make some difference but that a variable of 10 to 15 degrees would have no effect whatever. He stated there would be "not too much difference if the floor were waxed or unwaxed" but there would be some difference.

Counsel for plaintiffs then asked a hypothetical question based upon facts theretofore elicited including the size of the puddle, the depth of the water, the ring around the edges of the water and other facts bearing upon the issues in the case, and upon this hypothesis, asked the witness how long, in his opinion, the water had been on the floor at the time of the accident. An objection was sustained to the question upon the ground that the witness was not shown to be qualified to give expert testimony upon the subject. He was then asked if there were other factors not mentioned in the hypothetical question he would need to know in order to answer the question, objection to which was sustained. The court in sustaining the objection, stated it was not a proper matter for opinion evidence, that the witness could describe the condition of affairs; the jury themselves could draw conclusions, and declared that:

"* * * We are not permitting an engineer to take a look at a wet spot and say how long it took this wet spot to get wet; that is all there is to it."

Then the court proceeded:

"* * * I don't think it is a proper matter—a proper subject of opinion evidence in the absence of a complete analysis of the concrete and in the absence of a complete showing as to the wax, the consistency of the wax * *, the atmospheric conditions then and there present on that day, * * *. They are factors which are matters of common knowledge to all of us. The objection to that question is sustained."

The witness had previously testified in substance that atmospheric conditions of less than 100 degrees variable would not appreciably affect the test and that an analysis of the concrete was unnecessary to enable him to form an opinion in the matter about which he was being questioned, and that the presence or absence of wax on the floor would make "not too much difference".

Later during the course of the trial, the witness Keplinger was recalled to the witness stand and the hypothetical question repeated with perhaps some slight variation, and again the witness was asked how long, in his opinion, the water had been on the floor at the time plaintiff slipped and fell thereon. Objection to the question was sustained upon the ground the witness was not qualified. He was then asked:

"Q. Mr. Keplinger, in your answer you stated that it (water) penetrates into the floor depending upon the amount of time it is on the floor. Will you tell us what you mean by that?"

Objection thereto was sustained upon the ground that the witness was not qualified.

"Q. Can you tell us, what, if anything, happens to the floor if water is permitted to stay there for any period of time?"

Objection on the same ground sustained upon the ground that it had already been answered. Counsel for plaintiffs stated he didn't know what the answer was if it had been answered. Thereupon the court made the statement which counsel for plaintiffs characterizes as a rebuke to him and assigns it as error. The court's remarks read as follows:

"The Court: We might just as well come to an understanding; with the amount of testimony that is in here now this witness is not going to be permitted to make any guesses as to how long that water stood on the floor, on the cement. We will just start in from there and we will have a fine time for the rest of the case if you will just remember that it is not a matter of speculation and it is not a matter of expert opinion. There are just too many factors that cannot be taken into consideration and about which practically I am convinced no one, including the defendant, has any exact knowledge. All those factors can determine how long it took that water to discolor. Suppose it discolored immediately, it would still stay brown."

 Counsel for plaintiffs informed the court in substance that if the witness were permitted to testify he would state concrete would not discolor immediately upon water being poured on it. The court countered with the statement that the witness had no knowledge of how this particular concrete was mixed, what went into it, etc., and counsel for defendant added "or whether it is water-proof concrete or any other factors" to which the witness Keplinger replied:

"There is no such thing as water-proof concrete." Plaintiffs' counsel then asked:

"Q. What is the proportion of Portland cement sand and gravel used in making concrete floors in store buildings or in houses?"

to which objection was made and sustained upon the ground that the court and jury were only concerned with the concrete in the store building in question although the witness had testified that it was the same character of concrete as was usually placed in houses and buildings.

"Q. (By counsel for plaintiffs) Would a variation of the percentages of these quantities affect the appearance which water would have on the concrete, Mr. Keplinger?"

Objection upon the ground of no qualification. The objection was not specifically ruled upon but after a colloquy between counsel for plaintiffs and defendant concerning the witness's qualifications to testify, the court made the comment about which complaint is made in the above assignment of error. The court had previously said in sustaining the objection to plaintiffs' offer of proof if the witness were permitted to testify, that:

"I am not going to let—I am not going to permit an attempt to prove the length of time the water was on the floor by the rings around the spot on the floor where the water was. You may take it as a matter of judicial notice that water placed upon concrete will continue to spread."

This statement is incorrect in that the alleged statement of fact is not one of which the court could take judicial notice and is in direct conflict with the testimony of the witness Keplinger given both before and after the court's comment, of which complaint is made and is itself a comment upon the evidence.

 Considered in the light of the context and circumstances in which used, the statement complained of is clearly a comment upon the testimony of the witness to the effect that the court didn't believe it or that it was not true. The portion of the court's statement referred to by counsel for plaintiffs as a rebuke was improper and in referring to Keplinger's testimony as a "guess" constituted a comment on the credibility of the witness. The court had previously made similar comments as above pointed out, indicating a disbelief in the witness' testimony. A comment upon the

evidence violates article 6, section 12 of the Arizona Constitution, supra, and is reversible error. Reid v. Topper, 32 Ariz. 381, 259 P. 397.

We further believe it was error to sustain defendant's objections to the questions above enumerated, the sole purpose of which was to qualify the witness as an expert.

We will next consider assignment No. 1 to the effect that the court erred in granting defendant's motion for judgment n. o. v. It is a cardinal rule of this court that we must consider the evidence most strongly in favor of sustaining the verdict of the jury. Ong v. Pacific Finance Corp. of Cal., 70 Ariz. 426, 222 P.2d 801. Considering the evidence in this light, was there any substantial evidence from which a reasonable inference could be drawn supporting the verdict, or was the evidence of such a character that reasonable minds may differ as to the inferences to be drawn from the facts? If there was, the court erred in granting defendant's motion for judgment n. o. v. If there was not, then the ruling of the trial court must be sustained.

Defendant had moved for an instructed verdict both at the close of plaintiffs' case and at the close of all the evidence. Therefore under the provisions of Rule 50(b), section 21–1015, A.C.A.1939, no technical objection existed against the right of defendant to move for judgment n. o. v.

Section 21–1015, supra, provides that:

"* * * Within ten (10) days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; * * *."

Unless a motion for an instructed verdict has been made, a motion n. o. v. will not lie and the grounds for a motion for judgment n. o. v. must be the same as that upon which the motion for an instructed verdict had previously been made. La Bonne v. First Nat. Bank, 75 Ariz. 184, 254 P.2d 435. It is thus apparent that a motion for judgment n. o. v. is merely a delayed motion or a renewed motion for an instructed verdict. It is designed to permit the trial court within ten days after verdict, after more mature deliberation, to reverse its ruling in denying a motion for an instructed verdict if it then believes that such ruling was in error.

The question here presented is: Was the trial court justified in granting judgment n. o. v. after its consideration of the evidence in the case, in the light most favorable to the plaintiffs? The evidence is uncontradicted that there was water on the concrete floor in one of the aisles of defendant's store covering an area approximately one and one-half feet across it and one-quarter inch, more or less, in depth; that plaintiff in proceeding down the aisle to pay for the groceries she had procured

from the shelves of defendant's store, stepped in this water causing her foot to slip from under her throwing her to the floor resulting in said back injury; that at the time of the accident she was an invitee in the store; that the presence of water upon the floor was unexplained but it was stated by the manager that he knew of no way it could have gotten there except through the act of some of the employees of defendant. If the water was poured or spilled upon the floor by an employee of the defendant and permitted to remain there, knowledge of its existence upon the floor at the time and place is imputed to the defendant. Southern Casualty Co. v. Hughes, 33 Ariz. 206, 263 P. 584; Restatement of the Law, Agency, Par. 280; Cameron v. Shuttleworth, 75 Ariz. 61, 251 P.2d 659.

▮▮▮▮ Plaintiffs sought, however, to show by Mr. Keplinger, a civil engineer as above stated, that the water had been on the floor a sufficient length of time to charge the defendant with knowledge of its existence even if its presence was caused by a stranger to defendant. The witness was neither permitted to testify as an expert on the subject or to answer questions upon his qualifications to testify as an expert. In addition to the statements of the witness above related he testified that as a part of his experience with cement floors of the character in the defendant's store which he stated he had inspected, that he had conducted tests relating to its absorption of water; the effect of the water upon the floor; that the water would remain upon a confined area at the depth alleged in the instant case due to surface tension and would not spread beyond the area which the surface tension would hold it; that it would flatten out to where the weight of the water would hold the edges in. He characterized this as a law of physics which is well known; that it was the same force that holds water from running down the side of a glass or the beads that form on a glass or that causes raindrops to be circular or spherical; that the cement floor would absorb the water if permitted to remain there a sufficient length of time and that the result of the absorption would be to darken the cement as the water soaked into it. We believe the witness was qualified to give his opinion as to the length of time the water had been on the floor at the time of the accident. In any event, with or without his testimony it is our opinion that there was sufficient evidence before the court at the close of all the evidence to carry the case to the jury. We therefore hold it was proper to submit the case to the jury and consequently it was reversible error to thereafter grant defendant's motion for judgment n. o. v.

▮▮▮▮ Assignments Nos. 2 and 3 are based upon the refusal of the court to permit plaintiff and a Mrs. Wasieleski to testify concerning the length of time the puddle of water had been on the floor at the time of plaintiff's fall thereon. The admissibility of such evidence on the part of lay

witnesses whose experiment was conducted, not on the floor on which the accident occurred, but on floors in homes which they as laymen stated were similar to the one in the store, presents a more serious question. Mrs. Glowacki and her companion, Mrs. Wasieleski, conducted experiments by pouring water on the floor of the home of Mrs. Glowacki and on the floor of Mr. Langerman, counsel for plaintiffs, in an effort to see what the reaction of the concrete would be to the water in order to determine how long it would take to form a ring around the contracted perimeter of the water after it was placed upon the floor and especially the length of time it would require to form a ring six inches wide. We said in Ong v. Pacific Finance Corp. of Cal., supra, that [70 Ariz. 426, 222 P.2d 803]:

"* * * In order to admit such evidence the condition produced must be shown to be substantially the same as that existing at the time of the accident which condition it is claimed caused such accident and upon which the negligence of appellee is based. * * *"

In that case the plaintiff proposed a demonstration of pouring Johnson's wax on the floor and rubbing her foot in it in order that she might compare and state to the jury how the sensation felt in placing her foot in it with that of the floor at the time she fell. The facts are entirely different in that case but the principle is the same. We therefore hold under the ruling laid down in the Ong case, supra, that in the absence of competent evidence showing the floors to be the same or substantially the same as the floor in defendant's store on the date of the accident, the court correctly ruled out the evidence.

Assignment of error No. 8 complains of defendant's requested instruction No. 4 to the effect that if the jury found that plaintiff's injuries were caused by an unavoidable accident the verdict should be for the defendant. This is reversible error for the reason that there was not a scintilla of evidence tending to support the theory of unavoidable accident. The instruction should not have been given.

With respect to assignments of error Nos. 6 and 7 based upon defendant's requested instructions 1 and 19 given by the court, we are of the view that they do not correctly state the law; that the case of Moore v. Southwestern Sash & Door Co., 71 Ariz. 418, 228 P.2d 993, 995, is readily distinguishable and is not authority for such instructions. We held in that case that:

"The law is well settled that 'There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant.' "

The facts there were that the plaintiff, a building contractor, had taken heavy timbers to the defendant's place of business to have certain sizing done on them by means of a mechanically operated machine for planing lumber consisting of a shaft to

which were affixed three blades, each 12 inches long rotating at an extremely high rate of speed, the blades being raised about one-eighth of an inch above the level of the table, all of which was known and had been known to the plaintiff for some time. Plaintiff, as a reasonable man, was charged with knowledge of the dangers of such a mechanical saw, and hence the owner thereof was not bound to warn him of those dangers. Furthermore, it was held that the sole cause of plaintiff's injury was his own negligence.

But in the instant case the plaintiff did not have *knowledge* of the condition, that is, she did not know of the water on the floor. She therefore cannot be charged with knowledge of the dangerous character of the condition, unless she had a duty to know of the condition, and knowing it, would as a reasonable person have realized the dangers inherent therein. Plaintiff's duty is reasonable care for the safety of her person, under the circumstances. She was in a retail grocery store, not a planing mill where there was dangerous operating machinery. As a business invitee she had the right to rely upon the invitor to exercise reasonable care in making the premises safe for her. Considering these circumstances, her failure to see the water cannot be held as a matter of law to be a violation of any duty on her part.

It will be observed that the court stated that there is no liability from *dangers* that are obvious, etc. The instruction given here was to the effect that if the *condition* was obvious to the plaintiff as much so as to the defendant she could not recover. There is a difference between a condition and a danger. A condition may exist without a danger existing. Ordinarily water on a concrete sidewalk is not dangerous whereas it may be on a smooth concrete or cement floor in a home or business building. While the measure of duty of each under such circumstances is said to be that of ordinary care, there is unquestionably a greater duty resting upon a defendant engaged in the business of selling merchandise to discover whether there does exist any dangerous condition upon the premises, than devolves upon an invitee who has the right to assume that the premises are reasonably safe for his use as such invitee. In S. H. Kress & Co. v. Evans, 70 Ariz. 175, 218 P.2d 486, 488, we said:

"* * * We hold that the owner of a store must maintain the floors which the public is invited to use in such condition that under the circumstances of the particular case, they are reasonably safe for a customer to use."

In view of the fact that the case must be reversed and remanded for a new trial for the reasons hereinabove stated we believe it to be unnecessary to rule upon assignment of error No. 9 other than to observe that the general attitude of the court toward plaintiffs' case and its various comments upon the evidence could have adversely affect-

ed and probably did adversely affect the amount of the verdict.

The judgment is reversed and cause remanded with directions to grant plaintiffs' motion for a new trial.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.