336 P.2d 135

**CITY OF YUMA, Appellant,**

v.

**Frieda EVANS, by her Guardian ad litem, Herman Evans, Appellee.**

No. 6423.

Supreme Court of Arizona.

March 4, 1959.

Westover, Mansfield, Westover & Copple, Yuma, for appellant.

Brandt & Baker, Yuma, for appellee.

JOHNSON, Justice.

This is an appeal by the City of Yuma (referred to herein as appellant) from a judgment in favor of appellee, Frieda Evans, by her guardian ad litem, Herman Evans, in the sum of $12,000, for personal injuries sustained by Frieda Evans when she came in contact with exposed electrical wires in a washhouse operated by and under the control of the appellant, City of Yuma.

In June, 1955, the Housing Authority of the City of Yuma was operating the Somerton Migratory Camp under a lease from the Federal Housing Authority. Herman Evans and his family, including his three-year-old daughter, Frieda, became tenants at the camp on June 2, 1955. Among the facilities furnished to the tenants were wash and bath houses. The washhouse consisted of two units divided by a partition, and in each portion there were wash trays for the washing of clothes and next to the wash trays there was an electrical outlet on a post to connect washing machines.

The City of Yuma purchased all of the electricity used at the camp from the Public Service Corporation, which was deliver-

ed to transformers outside the camp, and the electricity was then metered through the Housing Authority to the tenants at the camp. The Housing Authority maintained all of the electric wiring within the camp and billed each tenant on a flat rate basis, which rate was included in the amount charged for rent.

On the afternoon of June 14, 1955, a fourteen-year-old girl living in the camp took Frieda Evans to the washhouse for the purpose of giving her a bath, instead of going to the women's bathing house which only provided showers. At the washhouse there were several children playing as they were accustomed to, and Frieda and her small brother each got into separate wash tubs and started playing in the water. The appellant admitted that when Frieda was getting out of the wash tub she came in contact with an electrical wire and received an electrical shock and was injured. The undisputed evidence showed her leg came in contact with an uninsulated electrically-charged wire protruding from a plug-in box that had the face plate missing. One of the children playing in the washhouse attempted to get Frieda off the wash tub but was shocked, and another girl grabbed Frieda annd pushed her to the floor. The electric shock that Frieda received was of sufficient intensity to burn her forehead black or blue at the hairline, made her face blue and caused a severe burn upon her right leg immediately above the knee.

The appellant first urges that the trial court erred in refusing to instruct a verdict in favor of the City of Yuma for the reason that the City of Yuma was not authorized by law to operate a migratory labor camp some 18 miles outside its territorial limits, and second, that in the operation of the camp it acted in a governmental capacity and hence was not liable for the torts of its employees.

The defenses of ultra vires and governmental immunity were not pleaded by the appellant in its answer to the complaint nor presented to the trial court during the trial nor in its motion for a new trial. These defenses must be specially pleaded in order to be available to the appellant, and they cannot be urged for the first time upon appeal. Arizona Life Ins. Co. v. Lindell, 15 Ariz. 471, 140 P. 60; 38 Am.Jur., Municipal Corporations, Sections 666 and 667. It is the settled rule in this jurisdiction that questions or issues which were not presented to the trial court may not be raised for the first time on appeal. City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 102 A.L.R. 837; Hallenbeck v. Yuma County, 61 Ariz. 160, 145 P.2d 837; Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78. We therefore refuse to consider these assignments of error.

The appellant next assigns as error the failure of the trial court to grant a new trial for the reason that the evidence dis-

closed that the facilities in which the minor child was injured were furnished by the appellant for the washing of clothes, and that the injury complained of occurred while the facilities were being used by the minor child for the purpose of taking a bath, and that there was no evidence showing that the appellant had notice of the alleged defects which caused the injury to the minor child.

It is undisputed in the evidence that the appellant furnished a washhouse which contained laundry tubs for the use of the tenants at the camp, and that electrical wiring and outlets were located therein for the purpose of plugging in electrical washing machines. The record conclusively establishes that the children at the camp regularly used the inside of the washhouse and the outside area as a playground, and the appellant had ample notice of this fact as its maintenance man testified he would frequently ask the children to leave the washhouse, and did this on some occasions as "much as two or three times a day." See Hays v. Bank of Arizona, 57 Ariz. 8, 110 P.2d 235. It is also undisputed that the wash tubs in the washhouse were at times used for bathing small children.

It was a question of fact for the jury to decide whether the use the children made of the washhouse was that intended or permitted by the appellant. The trial court properly submitted this question to the jury in instructing the jury that the appellant was not liable to the tenant or his children for injuries sustained because of the condition of a portion of the premises in the control of the appellant unless the injury occurred while the injured party was putting that portion of the premises to the use intended or permitted. The jury, in returning a verdict in favor of the minor child, necessarily found that a proper or a permitted use was being made of the washhouse at the time of the injury.

Appellee's first cause of action, upon which the jury returned its verdict, is based upon the negligence of the appellant in failing to properly maintain and keep in repair certain electrical wiring in the washhouse which proximately caused the injuries to the minor child. The appellee had the burden of showing that the appellant had notice of this defect and the resulting danger in sufficient time for a reasonably prudent person to have corrected it before the minor child was injured.

It is the general rule that a landlord may not be charged with responsibility for a defective condition unless he had actual knowledge of the condition, or that it has existed for such a period of time as to justify the conclusion that, in the exercise of ordinary care, he should have known of its existence within such time as would have given him a reasonable opportunity to make repairs.

■ The evidence of the appellant showed that an inspection was made of the washhouse within a week of June 14, the day of the accident, and that it was in good repair; while one of appellee's witnesses testified that the electrical wires had been in exposed condition since March before the accident, another stated two weeks or a month, and another witness stated for a week. We hold that in view of the conflict in the evidence the trial court properly submitted the question to the jury as to whether the appellant had knowledge of such alleged defective condition, or in the exercise of ordinary care should have known of such condition, and we are bound by the finding of the jury.

■ The next assignment of error is that the trial court erred in overruling appellant's objection to a hypothetical question propounded to a medical witness. The question was as follows:

"Q. Assuming for the purpose of this question that the evidence shows that Frieda Evans has received an electrical shock and assuming that the evidence shows that she was getting out of a wash tub, body being wet; assuming that her leg, right leg, came in contact with an electrical wire, two electrical wires; assuming the fact that her body became electrically charged and that her forehead became either black or blue for a short dura-

tion. Could such an electrical shock under those conditions which I have just stated to you result in a residual brain damage which would not show up until a period in excess of one year? A. Yes, as I previously testified, the damage to the central nervous system usually manifests itself within a period of six months after that up to a period of two years. If there has been no change at the end of a period of two years then you can assume that any subsequent evidence of brain damage would arise from a subsequent injury; that if there was any residual brain damage it should show up in the period between six months to two years."

Appellant's first objection was that the question assumed certain facts not in evidence, more specifically that portion of the question which stated " * * * that her body became electrically charged and her forehead became either black or blue for a short duration." This objection is without merit as there is ample evidence in the record of each of these factors upon which to base the hypothetical question, and further the answer filed by the appellant admits that the minor child received an electrical shock as a result of coming in contact with an electrical wire as she was getting out of the wash tub.

It is further alleged that the trial court was in error in permitting the doctor to

answer the question above set forth over the following objection of the appellant:

"Mr. Westover: * * * I also object for the reason and on the grounds that all the elements of this particular accident have not been set forth in the hypothetical question and the answer of the doctor to the hypothetical question could have no bearing upon the issues in this case because he does not have all the facts surrounding the accident."

It is argued by appellant that the question was improper for two reasons: first, it did not include the element that the little girl was not rendered unconscious by the shock; second, that the doctor had used a hearsay declaration received out of court in reaching his conclusion. These are not the grounds upon which the appellant based his objection to the court below, and by well-established rules he cannot seek a reversal by. this court upon grounds not particularized in the lower court. Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262; Jost v. Ross, 82 Ariz. 245, 311 P.2d 840. The purpose of requiring that specific grounds be stated in the objection is to enable the court to properly rule thereon, and also to afford opposing counsel an opportunity to amend and overcome the defect in the question propounded, if possible. Adelmann v. Elk River Lumber Co., 242 Minn. 388, 65 N.W.2d 661; Gold-berg v. Capitol Freight Lines, 382 Ill. 283, 47 N.E.2d 67; Coburn v. Moore, 320 Mass. 116, 68 N.E.2d 5; Frampton v. Consolidated Bus Lines, 134 W.Va. 815, 62 S.E.2d 126; 58 Am.Jur., Witnesses, Section 858.

We therefore hold that the objection was defective in that it failed to fully and definitely state the grounds on which it was based and that the trial court was correct in permitting the witness to answer.

Appellant also assigns as error an instruction given by the trial court:

"You are instructed that one who maintains electrical wiring in a place proximate to or in a place where children habitually congregate or that the landlord knew or should have known this fact, you are instructed that the landlord must exercise a high degree of care in guarding or maintaining such wires so that they will not cause injury to children."

on the ground that the words "high degree of care" placed a greater burden on the defendant than that of reasonable care.

The trial court had fully instructed the jury on the definition of negligence and the prudent man standard of ordinary care. Immediately prior to instruction complained of was one setting out the cautionary conduct, in the exercise of ordinary care, required in the maintenance of such electrical

equipment and which stated that an amount of caution reasonably commensurate with the problem of protecting others from the existing danger is required. This is a correct statement of the law. Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352; Salt River Valley Water Users' Ass'n v. Compton, 39 Ariz. 491, 8 P.2d 249.

This court, in speaking of the prudent man standard of ordinary care, has stated that

"* * * The degree of care to be used, of course, varies with changing circumstances. What would be ordinary care in one situation would constitute gross negligence under another.

* * *" Pacific Employers Insurance Company v. Morris, 78 Ariz. 24, 275 P.2d 389, 393.

Considering the instructions as a whole, the instruction complained of did not place any greater burden than that of ordinary care upon the defendant in requiring it to exercise a high degree of care in the maintenance of the wiring if children, to its knowledge, frequently congregate there. This instruction merely recited the amount of care necessary, under the circumstances, to meet the prudent man standard.

Appellant further contends that there was no evidence presented which would permit a recovery for future medical, hospital or nursing expenses or for future pain and mental anguish, and that the trial court committed error in instructing the jury that these elements could be considered in arriving at damages in the event the jury found that appellee was entitled to recover.

We hold that there is no merit to these contentions as there is ample evidence in the record to warrant the court in submitting these issues to the jury. Dr. Williamson, a witness for the appellee, testified as to the severity of the burn, which left a permanent scar, and which was of sufficient intensity to completely destroy the subcutaneous tissue, leaving only a thin layer of scar tissue over the muscle and which did not heal for over two months. The doctor further testified that the layer of superficial skin over the burn was very thin and any future "bump or scratch" of the area would peel off the skin, and that the healing qualities would be very poor; that to correct such condition a skin graft would be necessary to reduce the possibility of infection in the area of the burn, requiring hospitalization for a period of a month; and that the area would always be more susceptible to infection than the remaining portions of her body. There is no conflict in the record concerning the injuries received by the minor child, nor of the effects of such injuries in the future.

Dr. Williamson also testified, in answer to the hypothetical question hereinabove set forth, that under the facts of this case

238

residual brain damage would not manifest itself for a period of time from six months to two years after the injury, and that in his opinion, based on the fact of the black and blue coloring around the forehead of the minor child at the time of the injury, it indicated that the forehead had come in contact with a metallic object wherein electricity was drained off. He further testified that an electrical shock damages the central nervous system and described the consequences of such a shock upon the nervous system. We believe that this brief summary of the evidence sufficiently illustrates that the trial court was correct in submitting these issues to the jury and that the instruction complained of was proper.

Finally, appellant contends that the verdict of the jury was excessive. The jury is assigned the duty of fixing the amount of damages due an injured party in an action of this character. Its judgment is to be sustained unless it is so exorbitant as to indicate passion, prejudice, mistake or a complete disregard of the evidence and the instructions of the court. Stallcup v. Rathbun, 76 Ariz. 63, 258 P.2d 821; Town & Country Securities Co. v. Place, 79 Ariz. 122, 285 P.2d 165. We find no evidence in this action which indicates that the jury did not fairly, honestly and dispassionately assess the amount of damages. We hold that the evidence is sufficient to sustain the amount found to be due, and it is not within the province of this court, under such circumstances, to interfere therewith.

We have carefully considered all the remaining assignments of error and find they are without merit.

Judgment affirmed.

PHELPS, C. J., and STRUCKMEYER, UDALL, and BERNSTEIN, JJ., concurring.