351 P.2d 173

In the Matter of the ESTATE of Elsie SCHADE, also known as Elsa Schade, Deceased.

No. 6554.

Supreme Court of Arizona.

April 13, 1960.

Garland, Sanders & Martin, Las Cruces, N. M., for appellants.

Anderson and Smith, Safford, for appellee.

STRUCKMEYER, Chief Justice.

In July of 1954, Herbert Schade, appellee, hereinafter called proponent, petitioned the Superior Court of Greenlee County, Arizona, for admission to probate of a purported lost will of his mother, Elsie Schade, also known as Elsa Schade. The petition was opposed by appellants, Karl W. Schade, a brother, and three married sisters, Margaret Broadwell, Louise Perry, and Charlotte Newell, all natural children of Elsie Schade, hereinafter called contestants. The will was admitted to probate pursuant to the following facts:

In December of 1929, one Eugene Schwab, a real estate agent residing in Clifton, Arizona, at the instigation of Elsie Schade, drafted this instrument:

"Last Will and Testament of Elsie Schade.

"I, Elsie Schade, wife of Karl M. Schade, residing at Clifton, Greenlee County, State of Arizona, declare this to be my last will, hereby revoking all wills and testamentary papers heretofore made by me.

"I devise and bequeath all the estate and effects whatsoever and wheresoever, both real and personal, to which I may be entitled, or which I may have power to dispose of at my decease, unto my dear husband, Karl M. Schade, residing with me at Clifton, Greenlee County, Arizona, absolutely; and I appoint him sole executor of this my last will, and guardian of our infant children.

"I desire and direct that he be exempt from giving any surety or sureties on his official bond as executor.

"In Witness whereof I have hereunto set my my [sic] hand this —— day of Dec., 1929.

"Testatrix

"Signed by the said Testatrix, Elsie Schade, as her last will, in the presence of us, at her request, and in her presence, and in the presence of each other, we have hereunto subscribed our names as witnesses.

"Witness

"Witness"

The instrument is an unsigned copy from the files of Eugene Schwab. The original has never been produced.

Elsie Schade died on November 20, 1943. At that time, her husband, Karl M. Schade, was still alive. He, however, passed away on March 13, 1946, without having attempted to probate his wife's estate. Contestants, in their statement in opposition to probate of the will, raised four issues:

1. That the purported will was not duly executed by Elsie Schade.

2. That it was not properly attested by subscribing witnesses.

3. That the copy was not a true and correct copy of the original will.

4. That if the will was properly executed and attested and established as a true and correct copy of the original, still the original was not in existence at the time of Elsie Schade's death.

The issues so raised are in substance the issues presented to this court on appeal, there being fundamentally here questioned the sufficiency of the evidence to sustain the judgment of the court below.

 On issues 1, 2, and 3, the evidence is without conflict and plainly justifies their withdrawal by the trial court from consideration of the jury. In this jurisdiction it is procedurally proper for a court to instruct a verdict in favor of a party where to have ruled otherwise would have permitted the jury to draw speculative inferences not based on probative facts. Casey v. Beaudry Motor Company, 83 Ariz.

6, 315 P.2d 662. For the same reason, issues presented by pleadings should not be submitted if unsupported by evidence. Nor do we think that the rule is modified by the statute, A.R.S. § 14–353, requiring that issues of fact involving validity of the execution and attestation of a will by decedent or subscribing witnesses be submitted to a jury. Where the issue is speculative, no question is presented for the jury's determination.

 The evidence in favor of the validity of the execution and attestation and of the terms of the will is clear and unambiguous. Eugene Schwab, draftsman of the instrument and a subscribing witness, testified that he was well acquainted with Elsie Schade for much of her life, having attended both her wedding and her funeral; that in 1929 he drew a will for her which read and signed in his presence and in the presence of one Karl Claus, now deceased; that she was then of sound mind and acting of her own free will; that the will was executed in the presence of the subscribing witnesses and by the subscribing witnesses in the presence of each other and in the presence of Elsie Schade; that she then left with the original will which he never saw again. He further testified that the carbon copy introduced in court was made at the same typing operation as the original, and that it is an exact copy, incorporating the provisions of the original will. A carbon copy of a will, when supported

by oral testimony that it is an exact copy of the original, is admissible as secondary evidence to establish the making and the contents of a will that has been lost or destroyed. In re Auritt's Estate, 175 Wash. 303, 27 P.2d 713.

The disinterested witness, Ernest Schade, a cousin, testified positively and unequivocally:

"Q. I'll hand you Contestant's Exhibit number '1' for identification, and ask you if that appears to be a copy of the will which Mr. Karl M. Schade displayed to you?

\* \* \* \* \* \*

"A. This is the main body, this is an exact copy.

"Q. Now, Mr. Shade [sic], fixing the time when you saw this will, was it before or after the death of Elsa M. Schade? A. I would say a month after Mrs. Schade died.

"Q. \* \* \* I wonder if you would indicate \* \* \* you have stated that you saw Mrs. Schade's signature on that will? A. Yes.

"Q. Would you indicate the position where the signature was on that copy, Mr. Shade [sic]? A. On the first line.

\* \* \* \* \* \*

"Q. Now, were there any other signatures on the will? A. A fellow I

knew very well by the name of Karl Claus was on the second line as a witness.

"Q. Any other signatures on there? A. And Eugene Schwab \* \* \*."
Similarly, the disinterested witness, Meta Schade, wife of Ernest Schade, testified:

"Q. Mrs. Shade [sic], when did you see this will? A. A month after Mrs. Schade died.

\* \* \* \* \* \*

"Q. What signature did you see? A. Elsa Schade, Karl Claus, and Eugene Schwab.

"Q. I'll hand you Contestant's Exhibit number '1' for identification, and ask you if that appears to be a copy of the will which you saw.

\* \* \* \* \* \*

"A. This is the same Will I saw that Karl Schade showed me.'"

Likewise, the disinterested witness, Carl Crawford, testified:

"Q. At any time when you were home, and on one of those visits, did Kárl M. Schade show you a will? A. Yes.

\* \* \* \* \* \*

"Q. And, was there signatures on that Will? A. There were.

"Q. And whose were on the Will? A. Elsie Schade's.

**346**

"Q. And, do you remember the witnesses? A. Schwab and Claus."

While the witness did not read the will and hence could not say that the copy was a true copy, the testimony establishes the existence of a signed, subscribed will after the death of Elsie Schade.

Opposed to these disinterested witnesses' testimony is that of the contestants Charlotte Newell and Margaret Broadwell, and of Margaret Schade, wife of contestant Karl W. Schade. Margaret Schade testified:

"Q. When was the first time that you ever heard of Mrs. Schade having a will? Having made a will? A. Well, at one time when Mrs. Schade and I were looking for some papers, I saw what was an unsigned, that looked like a piece of paper that was unsigned, that could have been a form will.

"Q. Did you read it at that time? A. I glanced at it.

"Q. You say it was unsigned? A. What I saw was."

The witness could not identify the unsigned paper which she "glanced at" as the will originally prepared by Eugene Schwab. Hence, the testimony does not contradict the positive statements found in proponent's case.

Charlotte Newell testified:

"Q. Now, when you saw this document, that was after your mother's death? A. Which one are you referring to?

"Q. When you were snooping? A. Yes, as far as I remember that was after my mother's death."

* * * * * *

"Q. Was that signed or unsigned? A. As far as I remember it was unsigned, but I can't say it was or wasn't."

Here again the testimony is far too equivocal to permit more than a speculative conclusion.

The testimony of Margaret Broadwell taken at a former hearing was introduced:

"Q. The question was asked, 'Well, now, you knew your mother had a will when she died, leaving this property to your father. You knew that, didn't you?' The Answer: 'I am in the same position as Charlotte, just being there at the house and looking around and seeing something, but I don't remember what it was.'

"'Q. And you saw your mother's signature on it? A. I don't remember.'"

We are in accord with the trial court's opinion that there was no reasonable testimony which would permit the jury to in-

telligently return a verdict contrary to proponent on the first two issues.

Contestants further argue that the statute A.R.S. § 14–321, subd. B providing that a lost will shall not be established unless its provisions are clearly and distinctly proved by at least two credible witnesses was not complied with. It is sufficient to say that the testimony of three of proponent's witnesses manifestly does satisfy the statute.

■ At the conclusion of all the evidence, one special interrogatory was submitted to the jury:

"Was there an original Will signed by Elsa Schade, or Elsie Schade * * in existence at the time of the death of Elsa Schade?"

To this interrogatory the jury returned an answer in the negative. However, on motion of proponent and on reconsideration of the evidence, the court below entered judgment n. o. v., admitting the will to probate, it being the court's opinion that the existence of the will was established by competent, positive testimony, substantially uncontradicted.

As against the testimony that the will was in existence one month after Elsie Schade's death, contestants argue that there is evidence from which a jury could determine that no will was in existence then. The evidence relied on is, in part, from Margaret Schade who examined a Coca Cola box in which the mother's valuables were kept after her death. She testified that the family home caught fire in 1946 and burned completely to the ground; that several weeks after the fire she examined the Coca Cola box and that there were neither ashes in the box nor burned papers. This testimony is of doubtful probative force since admittedly she did not examine the box until several weeks after the fire. Moreover, the evidence, when considered in the light of the facts that the box was then found in the basement of the house, upside down with the lid ajar nearly two and one-half years after the death of the testatrix and after the will was last seen by Carl Crawford and Meta and Ernest Schade, is clearly insufficient to permit of an inference that the will did not in fact exist at the time of Elsie Schade's death.

In part, the testimony of Karl W. Schade is relied on. He testified, "To my knowledge there never was a will." Here again, the testimony is devoid of probative value. Karl W. Schade was away from home in the armed services from 1942 to 1947, and never examined the Coca Cola box where Elsie Schade kept her valuables.

■ Obviously the testimony of both Margaret Schade and Karl W. Schade is negative in character rather than affirmative. The rule in this jurisdiction as to negative evidence is too well settled to

permit of quibbling. Testimony that a witness did not see or hear an event is not sufficient in and of itself to prove that the event did not occur. Southern Pac. Co. v. Fisher, 35 Ariz. 87, 274 P. 779. It must be coupled with a predicate to establish that the witness was in a position to have heard or seen the occurrence if it had happened. Jeune v. Del E. Webb Const. Co., 76 Ariz. 418, 265 P.2d 1076; Cope v. Southern Pac. Co., 66 Ariz. 197, 185 P.2d 772; and see Udall, Arizona Law of Evidence, § 112, 210–211. Similarly, a witness must have been in a position to know that an occurrence did not take place. For the evidence to have any probative value, contestants' witnesses would have to be in a position to know that the will had been destroyed or was not in existence at the time of Elsie Schade's death.

◼ The proponent of the will, Herbert Schade, also testified positively that he had seen the will shortly after his mother's death. Contestants urge that there was no way by which they could refute either his testimony or that of the other three witnesses except to attack their credibility, and that the credibility of witnesses is for the jury's determination. As an abstract proposition this is correct. The weakness as applied here lies in the fact that proponent's disinterested witnesses are not contradicted by circumstances which cast suspicion upon the facts testified to by them, nor is there evidence intrinsically unbelievable. It is the rule that triers of facts may not arbitrarily reject uncontradicted evidence when there is nothing intrinsic in the evidence itself, or extrinsic in the circumstances of the case which casts suspicion thereon; so that where the evidence of an interested witness is corroborated by a disinterested witness, a rejection of that evidence amounts to arbitrary action. In re Gary's Estate, 69 Ariz. 228, 211 P.2d 815.

◼ Contestants complain of certain procedural matters which in the light of our holding can be disposed of perfunctorily. At the conclusion of all the evidence, proponent of the will moved for a directed verdict. This motion was denied, the court stating: " * * * I am doubtful but I am going to let the jury have the first crack at it." Thereafter, as stated, the trial court directed the entry of judgment non obstante veredicto. Such procedure is expressly provided by Rule 50(b), Rules of Civil Procedure, 16 A.R.S. 491, wherein if a motion for a directed verdict is for any reason not granted, a party may move to have the verdict set aside and judgment entered in accordance with the motion for a directed verdict. The motion for judgment n. o. v. is a renewal of the motion for an instructed verdict, and is designed to permit the trial court, after more mature deliberation, to revise its ruling in denying the motion for an instructed verdict. Glo-

wacki v. A. J. Bayless Markets, 76 Ariz. 295, 263 P.2d 799. In this instance, the entrance of judgment notwithstanding the verdict was eminently correct.

The contestants further complain that the trial court erroneously shifted the burden of proof to them to establish the averments set forth in their opposition to probate. We do not believe that it is necessary to pass on the question raised.

■ At the trial of the contest, both parties were given the fullest opportunity to call any witnesses who were acquainted with any of the relevant facts and circumstances. Opportunity was given for examination and cross-examination and impeachment of the witnesses produced. If the trial court misplaced the burden of proof in its instructions to the jury, it was harmless, for as we have stated, there is no competent evidence sufficient to establish contestants' averments and the motion for a directed verdict should have been granted in the first instance. Where a technical error has occurred but has not interfered in the application of the substantive rules of law which correctly measure the rights of the parties litigant, we will not reverse.

In re Regaldo's Estate, 77 Ariz. 180, 268 P.2d 973; art. VI, § 22, Constitution of the State of Arizona. A.R.S. The claim of irregularity does not require reversal because prejudice did not result therefrom.

■ Contestants also urge that because there is a presumption that a lost will was destroyed by the testatrix animo revocandi, this presumption would be sufficient to carry them to the jury for its determination as to whether the will was still in existence at the time of the death of the testatrix. Presumptions of this nature are raised only in the absence of evidence on the ultimate fact in question, and retire upon the receipt of evidence contradicting them. State Tax Commission v. Phelps Dodge Corporation, 62 Ariz. 320, 157 P.2d 693. The presumption of destruction animo revocandi having been retired by the positive evidence of the will's existence one month after the death of the testatrix, no questions of fact remain for consideration by the jury.

Judgment affirmed.

PHELPS, UDALL, JOHNSON and BERNSTEIN, JJ., concur.