407 P.2d 380

**The SHELL OIL COMPANY, a corporation, Appellant,**

**v.**

**Jean COLLAR, Appellee.**

No. 7291.

Supreme Court of Arizona.

En Banc.

Nov. 3, 1965.

Rehearing Denied Nov. 30, 1965.

Westover, Mansfield, Westover & Copple, Yuma, and Kramer, Roche, Burch & Streich, Phoenix, for appellant.

Nebeker & Nebeker, Yuma, for appellee.

BERNSTEIN, Justice.

Defendant, the Shell Oil Company, appeals from a $30,000 judgment entered against it in the superior court of Yuma County, and submits that the judgment should be reversed with the trial court instructed to enter judgment for defendant, or that the judgment should be reversed and the superior court be instructed to grant its motions for a new trial.

Plaintiff named three defendants in her complaint. After her case in chief was presented to the jury the superior court granted Butane Corporation's motion for a directed verdict. The motion to dismiss Tate and Hobart Gas and Equipment Company was held under advisement and then granted before the case was submitted to the jury. Of the three named defendants only Shell Oil Company was subjected to the jury's verdict.

With only Shell Oil as a defendant the relevant facts of the case are simple to relate. In doing so we will view the evidence on the issue of negligence in a light most favorable to the plaintiff who prevailed in the trial court. Sax v. Kopelman, 96 Ariz. 394, 396 P.2d 17. On May 20, 1958, plaintiff, Jean Collar, attempted to determine if a water heater on her Wellton, Arizona, property was lit. After smelling for escaped gas and concluding that there was none in the air, plaintiff lit a match to find her way in the dark. She was near the water heater and an explosion followed hurling plaintiff across the room causing the complained of injuries.

Defendant's first assignment of error is joined with its request that the superior court judgment be reversed and the lower court be instructed to enter judgment for defendant. Defendant Shell Oil contends the superior court erred for not granting its motion for a directed verdict at the close of plaintiff's case because the plaintiff had not introduced any testimony or evidence of probative value which raised an issue of fact of Shell Oil's negligence.

The complaint alleges that defendant put into distribution for sale propane gas which, in its natural state, is odorless. As to whether the complaint alleges in proper form that there was insufficient odorization of the gas by defendant we will later discuss under defendant's second assignment of error. Assuming that insufficient odorization is synonymous with a failure to odorize, plaintiff contended that had she smelled the gas she would never

have lit the match. She also contended that she had ordinary olfactory capabilities and under the circumstances it must be concluded that defendant was negligent—either for not adding a malodorant to the propane gas or in adding an insufficient quantity of odorization.

At the trial plaintiff testified as follows:

"Q   Jean, let me ask you this. Have you ever had any difficulty with your sense of smell?

"A   None whatsoever.

"Q   Did you smell for gas?

"A   Yes, I smelled for gas.

"Q   And did you detect any odor?

"A   No, I did not.

"Q   Did you notice a hissing sound or anything like that?

"A   No, I didn't.

"Q   Do you recall smelling for the gas?

"A   Yes.

"Q   Did you do this before you lit the match?

"A   Yes."

Defendant contends this is negative testimony and as such has no probative value. It states that negative testimony is testimony by a witness that he did not receive sensory experiences of an alleged fact or event, the existence of which is in issue. In the recent case of In re Schade's Estate, 87 Ariz. 341, 351 P.2d 173, we said:

"*   *   *   The rule in this jurisdiction as to negative evidence is too well settled to permit of quibbling. Testimony that a witness did not see or hear an event is not sufficient in and of itself to prove that the event did not occur. It must be coupled with a predicate to establish that the witness was in a position to have heard or seen the occurrence if it had happened. Similarly, a witness must have been in a position to know that an occurrence did not take place." [citations omitted]. Id. at 347, 348, 351 P.2d at 177, 178.

In 11 Wigmore on Evidence, § 664, it is stated that there is no inherent weakness in testimony that a fact did not occur, founded upon the witness' failure to hear or see a fact which he would supposedly have heard or seen had it occurred. The only requirement is that the witness be so situated that *"in the ordinary course of events he would have heard* or seen the fact had it occurred." The cases hold this sort of testimony is constantly received. Fish v. Southern Pac. Co., 173 Or. 294, 143 P.2d 917, 145 P.2d 991; Berg v. New York Cent. R. Co., 391 Ill. 52, 62 N.E.2d 676; Estate of Dalton v. Grand Trunk Western Railroad Company, 350 Mich. 479, 87 N.W.2d 145; Perry v. Butler, 142 Me. 154, 48 A.2d 631; Kindt v. Reading Co., 352 Pa. 419, 43 A.2d 145, 162 A.L.R. 1, 3.

In Perry v. Butler, supra, it was said:

"Testimony that an event did not occur, given by one who was in a position to observe, is positive."

An excellent general discussion of the problem can be found in Estate of Dalton v. Grand Trunk Western Railroad Co., supra, 87 N.W.2d at p. 148:

" * * * We do not, of course, reject testimony merely because it is negative. * * *"

* * *

" * * * The problem involved in its use, however, arises because from it two conflicting inferences are possible, a) that the event did not occur, or b) that it did occur but that the witness, for certain reasons, did not hear it. The mere fact of nonhearing, standing alone, ordinarily has no probative value whatever as to the occurrence, or non-occurrence, of the event. * * * Thus the burden upon him who relies upon negative testimony is marked: he must show the circumstances pertaining to the non-observance, the witness' activities at the time, the focus of his attention, his acuity or sensitivity to the occurrence involved, his geographical location, the condition of his faculties, in short, all those physical and mental attributes bearing upon his alertness or attentiveness at the time."

Defendant recognizes the plaintiff testified to the following facts: she had never had any difficulty with her sense of smell; she smelled for gas; she did not detect any odor before lighting the match, nor did she hear any hissing sounds. We believe that this is a predicate sufficient to convert a mere negative statement into positive testimony. In other words here we have both a negative statement and a positive assertion. The latter characteristic results when a predicate is established. That defendant's evidence tends to conflict with plaintiff's in no way alters the nature of plaintiff's testimony once it is established, for then plaintiff has produced positive testimony which is at least the equal of defendant's evidence until the jury resolves the conflict of fact. Accord Davis v. Boggs, 22 Ariz. 497, 199 P. 116, quoting from Menard v. Boston and Maine R. R., 150 Mass. 386, 23 N.E. 214. Where there is credible evidence from which negligence might be inferred, it is a question for the jury to determine whether there has been such negligence. Campbell v. Brinson, 89 Ariz. 197, 360 P.2d 211; Oklahoma Natural Gas Co. v. Ross, C.C.A.Okl., 131 F.2d 238; Detroit City Gas Co. v. Syme, C.C.A.Mich., 109 F.2d 366. That plaintiff was mixing paint prior to the lighting of the match, and that such paint fumes might have affected her sense of smell is merely a matter for the jury's consideration.

In his instructions to the jury the trial judge made these comments which are the basis of defendant's second assignment of error:

"Now this action is based of course upon negligence, the alleged or claimed negligence of the Shell Oil Company in failing to effectively odorize the gas."

\* \* \* \* \* \*

" \* \* \* The mere fact that the gas may have been odorized is not sufficient of itself to relieve the defendant Shell Oil Company of liability. The gas should have been effectively odorized to give warning in the event of any leak or escape."

\* \* \* \* \* \*

"Now the sole question of liability is whether or not the defendant Shell Oil Company effectively odorized the propane gas sold by it."

Defendant takes the position that the trial judge erroneously submitted the case to the jury on the theory of negligence because plaintiff only pleaded there was a complete lack of odorization instead of ineffective odorization. Defendant contends it was therefore without notice of the issue of negligence and thus did not prepare and defend on such a theory.

The following is extracted from plaintiff's amended complaint:

"That on or before May 20, 1958, Defendant, Shell Oil Company, sold \* \* a quantity of propane gas for domestic consumption in Plaintiff's home which had *no malodorant* added to it. \* \* \*" (Emphasis supplied.)

\* \* \* \* \* \*

" \* \* \* *same was not odorized* \* \* \* and that as a direct and proximate result of the negligence of the Defendants *in failing to odorize the gas.* \* \* \*" (Emphasis supplied.)

\* \* \* \* \* \*

"The negligence \* \* \* in addition to that herein alleged consisted of:

"A. *Failure to odorize* the propane gas.

"B. \* \* \* selling it \* \* \* *without having odorized same.*" (Emphasis supplied.)

With the exception of the first quotation above—"no malodorant added"—we believe the pleadings provided ample notice of negligence. "Not odorized", "failing to odorize" and "without having odorized", are general allegations. Implicit therein is negligent, or ineffective odorization for the test of an odorant is whether it can be smelled. Doxstater v. Northwest Cities Gas Co., 65 Idaho 814, 154 P.2d 498.

The plaintiff's allegations were that there was no malodorant, whatsover, added to the propane gas, or that whatever was added was so far below the sensory threshhold as to be ineffective and undetectable. Further as a practical matter it appears no preju-

**160**

dice resulted from defendant's theory by trying the case solely on the basis that a malodorant was added. When plaintiff based her case upon so simple a foundation as not being able to smell the gas, regardless of what evidence defendant presents (here testimony of two men that malodorant was added at the original point of distribution) it finally boils down to whether plaintiff . was believed or not.

■ We find no merit in defendant's third assignment of error founded on Rule 33, Rules of Civil Procedure, 16 A.R.S., contending the superior court erred in admitting into evidence the burner unit. There is no evidence in the case which would indicate that plaintiffs received any gas from a source other than Shell Oil. With defendant Butane and Tate and

Hobart out of the case, the only issue was not how the gas escaped, but its condition when mixed with the air. Defendant never attempted to disprove it was their gas which exploded but instead defended on the ground their gas was odorized. Their argument is moot at this point.

■ As its final assignment of error defendant contends plaintiff's requested instruction number seven, as modified,[1] constitutes comment, by the trial judge, upon the evidence and is a formula instruction, in effect instructing the jury that if certain facts are found to exist negligence must follow. The preceding instructions did require the jury to consider the circumstances.[2] It is well established that if a single instruction omits an essential element of the cause, but it is a correct declaration

1. "The plaintiff contends that prior to the explosion complained of the gas was not sufficiently odorized so as to give warning to her of its escape. The mere fact that the gas may have been odorized is not sufficient of itself to relieve the defendant Shell Oil Company of liability. The gas should have been effectively odorized to give warning in the event of any leak or escape. Even though you may find the defendant Shell Oil Company did odorize the gas, nevertheless, if the gas was not so odorized as to give effective warning to persons having ordinary sense of smell in the event of its escape, then you may find that the defendant Shell Oil Company was negligent, and if its negligence was the proximate cause of plaintiff's damages, then the plaintiff may recover by reason of such negligence."

2. " * * * Now by negligence we mean the want of reasonable and ordinary care

which under the same set of facts and circumstances would be exercised by persons of ordinary prudence and foresight. Negligence may consist of an act or a failure to act. It is therefore such an act as a person of ordinary care under existing conditions and circumstances would not do, or such failure to do something which under existing conditions and circumstances a person of ordinary care would have done. So negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such person under the circumstances would not have done. In other words it can either be doing something or failing to do something that a reasonably prudent person would' have done under the circumstances."

of the law so far as it goes, and the omitted element is correctly given in another instruction, the omission will ordinarily be cured thereby. City of Yuma v. Evans, 85 Ariz. 229, 336 P.2d 135.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concurring.