490 P.2d 853

### DODGE CITY MOTORS, INC., an Arizona corporation, Appellant,

v.

### Anthony ROGERS and Christina Rogers, his wife, Appellees.

### No. I CA–CIV 1457.

Court of Appeals of Arizona,
Division 1,
Department A.
Nov. 22, 1971.

Rehearing Denied Dec. 9, 1971.
Review Denied Jan. 11, 1972.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Jay M. Martinez, Phoenix, for appellant.

States, Meyer & Vucichevich by P. Richard Meyer, Phoenix, for appellees.

DONOFRIO, Judge.

This is an appeal by Dodge City Motors from a judgment against it in favor of appellees Anthony Rogers and Christina Rogers, his wife.

The Rogers (appellees-plaintiffs) filed an action in fraud against Dodge City Motors (appellant-defendant) to recover compensatory and punitive damages for alleged fraudulent misrepresentations made by Dodge City Motors to the Rogers that induced the Rogers to purchase an automobile from Dodge City Motors. The parties will be referred to as they appeared in the trial court.

The case was tried to a jury that returned a verdict for plaintiffs in the sum of $1,000 compensatory damages and $10,-000 punitive damages. The Rogers subsequently consented to a remittitur of $500

on the award of $1,000 compensatory damages. Defendant appeals from the judgment entered on the verdict after plaintiffs consented to the remittitur, and from the denial of its post-trial motions.

The following are the facts viewed in the light most favorable to sustaining the verdict and judgment. Shell Oil Company v. Collar, 99 Ariz. 154, 407 P.2d 380 (1965); Law v. Sidney, 47 Ariz. 1, 53 P.2d 64 (1936). On April 12, 1968 plaintiffs purchased a used 1965 GTO Pontiac automobile from defendant for $2,539. Toward the purchase price plaintiffs applied a 1957 Chevrolet Corvette as a trade-in, for which they were allowed $689.10. At defendant's suggestion, plaintiffs borrowed $500 cash from American Finance Co. This amount, plus the allowance on the Corvette, left a balance of $1,350 which was financed through Chrysler Credit Corporation.

Mechanical problems immediately developed on the GTO, and on Sunday, May 5, 1968, approximately three weeks after the purchase of the GTO, plaintiffs traded it in to defendant for a used 1968 Plymouth Barracuda. Plaintiffs testified that they took the GTO to defendant on that date for repairs and were told by defendant's employees to trade the car for a good one. According to plaintiffs' testimony, defendant's employee represented that defendant acquired the Plymouth Barracuda as a trade-in from an FBI agent. The automobile was actually purchased from a used car dealer.

Plaintiffs testified they were told by defendant that the entire transaction for the GTO automobile would be rescinded, and the down payment of $500 plus the trade-in of $689 applied to the purchase of the Plymouth Barracuda. This was denied by defendant. Defendant's sales manager testified that defendant had no reason to rescind the GTO transaction because there was no warranty on that automobile, and further, if defendant wanted to rescind that transaction it would have been unable to do so as the contract had been sold to Chrysler Credit Corporation. The retail

buyer's order, however, showed a 90-day warranty on the GTO, and regarding the sale to Chrysler one of defendant's accounting employees testified that defendant's sales manager did not have access to the records to know ·whether or not defendant had been paid on the GTO contract by Chrysler Credit Corporation.

Plaintiffs signed the contract in blank, testifying that defendant's sales manager told them the contract could not by law be filled in on Sunday, and would be filled in later as agreed to, and mailed to plaintiffs. The contract was a form contract employed by Chrysler Credit Corporation throughout the United States, and did contain a notation that the contract could not be signed on Sunday. Defendant's sales manager stated the reason for not filling in the terms of the contract was that no personnel were available at that time to type in the provisions. This also was shown to be untrue, as one of defendant's accounting employees testified that personnel were available to do typing on that day.

Thereafter plaintiffs received the contract through the mail and according to their testimony the contract terms differed from those previously agreed to. Plaintiffs testified that the agreed price on the automobile was $3,100 and that approximately $300 would be added for the installation of air conditioning. The contract as mailed stated the purchase price as $3,450, but did not credit the $500 given as a down payment on the GTO to the purchase of the Barracuda. Defendant asserted that the agreed price for the Barracuda was $3,950, allowing $2,539.10 trade-in for the GTO, but to save plaintiffs approximately $20 sales tax, the values on both the Barracuda and GTO were reduced $500, explaining that the $500 GTO down payment was taken up in this reduction.

Upon receipt of the contract plaintiffs went to defendant and complained that they had not been credited with the $500 paid on the GTO. No agreement could be reached, and this suit was subsequently brought.

Defendant presents two questions for review. The first is that the trial court erred in denying defendant's post-trial motion for judgment notwithstanding the verdict, or in the alternative for new trial because each of the nine elements of fraud was not established by clear and convincing evidence.

We shall first discuss defendant's motion for judgment notwithstanding the verdict, made pursuant to Rule 50(b), Rules of Civil Procedure, 16 A.R.S. Our Supreme Court has recently stated in Rodriguez v. Williams, 107 Ariz. 458, 460, 489 P.2d 268, 270 (filed October 5, 1971) that:

"Rule 50(b) provides that a party 'who has moved for a directed verdict' may, not later than 10 days after entry of judgment, move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict. A motion for judgment notwithstanding the verdict may not be entertained unless a motion for directed verdict was made at the close of all of the evidence, prior to submission of the case to the jury, La Bonne v. First National Bank of Arizona, 75 Ariz. 184, 254 P.2d 435 (1953); Loya v. Fong, 1 Ariz.App. 482, 404 P.2d 826 (1965), since it is merely a renewal of the motion for directed verdict and is designed to permit the trial judge, after more mature deliberation, to revise his ruling in denying the movant's motion for directed verdict. In Re Schade's Estate, 87 Ariz. 341, 351 P.2d 173 (1960); Glowacki v. A. J. Bayless Markets, 76 Ariz. 295, 263 P.2d 799 (1953). * * *"

The minutes and reporter's transcript show that defendant made a motion for a directed verdict at the close of plaintiff's case. The motion was denied. After all the evidence had been presented and after all the parties had rested, the record is silent as to the renewal of defendant's

motion for a directed verdict. Thus, we hold that a motion for judgment notwithstanding the verdict will not lie under these circumstances. However, this holding is not too vital because our review of the record convinces us of the correctness of the trial court's ruling.

Defendant made a motion in the alternative for a new trial pursuant to Rule 59, Rules of Civil Procedure, 16 A.R.S. The case of Rodriguez v. Williams, supra, dealt also with this problem, stating:

> "Relative to plaintiffs' motion for new trial, we need only reiterate that the grant or denial of such motion is addressed to the sound discretion of the trial court and, barring a manifest abuse of that discretion, the lower court's decision will be upheld on appeal. General Petroleum Corp. v. Barker, 77 Ariz. 235, 269 P.2d 729 (1954); State v. Turner, 92 Ariz. 214, 375 P.2d 567 (1962). * * *"

We find it sufficient to state that we have thoroughly reviewed the record and find no manifest abuse of discretion.

Defendant's second question asserts that the punitive damages should not be sustained as they bear no reasonable relation to the amount of actual damages, are the product of passion and prejudice, and are outrageously excessive in light of the conduct complained of. We disagree.

Our Supreme Court stated in Nielson v. Flashberg, 101 Ariz. 335, 341, 419 P.2d 514, 520 (1966) that:

> "The amount of an award for punitive damages being a matter of discretion of the trier of fact, such award will not be disturbed unless it is so unreasonable in regard to the circumstances of the case as to show the influence of passion or prejudice. * * *"

Defendant urges that we adopt a compensatory punitive damage ratio limit. Using such a formula, defendant urges that the ratio of punitive damages to compensatory damages, i. e., twenty to one after the remittitur, is excessive in this case.

We have no such formula in this state. In Arizona the determination as to whether punitive damages are excessive is based solely on the circumstances of each case. One of the factors which the jury may take into consideration in assessing the degree of punishment is the wealth of the defendant, which was shown in this case. Nielson v. Flashberg, supra.

After a review we do not find the award of punitive damages in this case to have been so unreasonable or disproportionate as to warrant a new trial.

Judgment affirmed.

STEVENS, P. J., and CASE, J., concur.